Keren Sanders MILLER, as Administratrix De Bonis Non With Will Annexed of the Estate of Sara Johnson Turner, Deceased, Plaintiff,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and James K. Harper, Jr., Defendants.

Civ. A. No. C82–72A.

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 7, 1983.

Donald B. Deloach, Harold T. Daniel, Jr., Webb, Daniel & Betts, Atlanta, Ga., Will R. Ford, Ford & Cornelius, New Albany, Miss., for plaintiff.

Thomas S. Richey, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

This action is before the court now on defendants' motion for summary judgment. Plaintiff's claim seeks compensatory and punitive damages for violations of federal securities laws, fraud, and breach of a fiduciary duty owed by defendants to Sara

Johnson Turner. Defendants' motion, originally filed as a motion to dismiss and converted to one for summary judgment by this court's order of December 15, 1982, asserts four grounds for dismissal. Defendants argue that plaintiff lacks standing to assert these claims, that she has failed to join necessary and indispensable parties, that she has failed to allege with sufficient particularity the facts upon which her claims of fraud are based, and that she is barred by the applicable statutes of limitations.

The facts in this case are relatively straightforward. Mrs. Sara Johnson Turner had two securities accounts with the defendant Merrill Lynch. Although advanced in years, Mrs. Turner appears to have been a dynamic and strong-willed woman who was actively involved in the management of her financial affairs, at least in the early 1970's. After 1976 Mrs. Turner's health and eyesight began to fail, and there is some controversy about the extent to which she was able to monitor her affairs thereafter. She died as a result of arteriosclerosis on November 26, 1979, at the age of 94. During the last three years of her life, the value of her accounts at Merrill Lynch decreased dramatically from an amount close to $200,000 to about $70,000 or $80,000. During this period Merrill Lynch conducted very active trading of the securities in her accounts, resulting in short term capital losses of almost $75,000 for the three years. During this period Merrill Lynch received approximately $35,000 in commissions.

There is substantial controversy about Mrs. Turner's awareness of the activities in her accounts during the last three years of her life. A temporary guardian was appointed for Mrs. Turner for 90 days in 1976, at her request, apparently for the purpose of protecting her from her relatives who she believed planned to remove her and her belongings from Atlanta against her will. Mrs. Jonabelle Conway-Carter was Mrs. Turner's close friend, accountant, and financial manager during the last years of her life and exercised Mrs. Turner's power of attorney during this period. She has testified that Mrs. Turner, even during the last years, was actively involved in decisions concerning trading in her accounts. Mrs. Conway-Carter examined all the statements sent by Merrill Lynch concerning Mrs. Turner's account and prepared the tax returns showing the capital losses. She has testified that she went over these tax returns with Mrs. Turner "line by line." As contradiction to this evidence of Mrs. Turner's competency, plaintiff relies solely on testimony by Mrs. Turner's doctors that she was legally blind and unable to handle all her business affairs.

After Mrs. Turner's death in 1979 Mrs. Conway-Carter was appointed temporary administratrix of her estate. She was appointed permanent executrix of the estate on May 28, 1981. As early as November 1980, plaintiff appears to have believed that a claim for churning could be asserted against Merrill Lynch. She asked and then demanded that Mrs. Conway-Carter file suit against Merrill Lynch, but Mrs. Conway-Carter declined to do so for the stated reason that, based upon her knowledge of Mrs. Turner's involvement in her financial affairs, she did not believe that a valid claim existed. Mrs. Conway-Carter testifies that after investigation of the facts, she concluded that filing suit would be a waste of the estate's assets. Plaintiff then filed suit as an heir and for the benefit of the estate on January 11, 1981. Defendants filed their motion to dismiss shortly thereafter, asserting the grounds stated above. On May 28, 1981 Mrs. Conway-Carter presented Mr. David Betts, who claimed to represent all of Mrs. Turner's heirs who lived in Mississippi, with the sole exception of a Mrs. Clara McNutt, a check for $36,000 as settlement for all claims those heirs might have relating to Sara Johnson Turner's estate. On May 25, Mrs. Conway-Carter, with the approval of the probate court, resigned as executrix of the estate, and Mrs. Miller was appointed administratrix D.B.N., C.T.A. On June 23, 1982 Mrs. Miller was granted full power to represent the estate. Merrill Lynch appealed the order of the probate

court, but its appeal was dismissed on December 14, 1982.

## I. PLAINTIFF KEREN MILLER'S STANDING.

Defendants originally asserted two reasons for finding that plaintiff Miller had no standing to bring this action. First, defendant asserted that plaintiff was neither a purchaser nor a seller of securities and thus had no standing to bring an action under 15 U.S.C. § 78j(b) or Rule 10b–5 of the SEC. Second, defendant asserted that plaintiff had no standing to bring her state law claims against Merrill Lynch because she was not legally entitled to represent the estate. Although Mrs. Miller was only one of many heirs of Mrs. Turner when she filed the suit on January 11, 1981, the probate court's order of June 23, 1982 clearly gives her standing to represent the estate at this time. This cures this defect in her original complaint.

As to plaintiff's federal securities law claims the law is clear-cut. In order for a plaintiff to have standing to assert a claim under 15 U.S.C. § 78j(b) or Rule 10b–5, he must be either a purchaser or a seller of securities. *Blue Chip Stamps v. Manor Drugstores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Herpich v. Wallace,* 430 F.2d 792, 806 (5th Cir.1970); *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir. 1952). This is true even where plaintiff, who did not purchase or sell securities, can show harm as a result of defendants' illegal conduct. *Blue Chip Stamps, supra.* Plaintiff in this case is clearly neither a purchaser nor a seller of securities, and she therefore lacks standing to assert claims on her own behalf.

However, a finding that Mrs. Miller lacks individual standing does not end the inquiry, for she is asserting this claim on behalf of the estate of Mrs. Turner. As administratrix she is entitled to bring any action Mrs. Turner could have brought in her lifetime and which does not abate at death. Mrs. Turner was clearly a purchaser and seller of securities within the meaning of the securities laws, and she therefore had

standing to assert this claim. The question then becomes whether a cause of action for churning brought under Rule 10b–5 abates at death. The court has found no case which directly addresses this issue, but the court believes that such a cause of action does not abate at death. An action for churning is essentially a suit claiming a tort against property. Such suits ordinarily survive the death of the plaintiff because that property constitutes a part of her estate. *See Arent v. Bray,* 371 F.2d 571 (4th Cir. 1967). *Cf. Cinnamon v. Abner A. Wolf, Inc.,* 215 F.Supp. 833 (E.D.Mich.1963) (death of plaintiff during pendency of private antitrust suit did not abate the action, and executor could be substituted as party plaintiff). The court therefore holds that an action brought under 15 U.S.C. § 78j(b) and Rule 10b–5 does not abate at the death of the plaintiff, and that Mrs. Miller, as administratrix de bonis non with will annexed, has standing to assert this claim on behalf of the estate of Mrs. Turner.

## II. FAILURE TO JOIN NECESSARY AND INDISPENSABLE PARTIES.

Defendant argued in his motion to dismiss that plaintiff as only one of "numerous" heirs of Mrs. Turner should not be entitled to bring an action without joining those heirs as parties to the suit. While this was a valid complaint at the time, it has since been cured by Mrs. Miller's appointment as administratrix de bonis non with will annexed and the grant by the probate court of authority to bring actions on behalf of the estate. Since this action is brought on behalf of the estate of Mrs. Turner, there is no need to join any of the heirs as parties. This concern is therefore moot.

## III. FAILURE TO PLEAD FRAUD WITH REQUISITE PARTICULARITY.

Defendant asserted that plaintiff had failed to plead the facts upon which the claims of fraud were based with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. After several

amendments to the complaint, there is now an abundance of factual allegations in support of her claims of churning, fraud, and breach of a fiduciary duty. The complaint asserts facts concerning the nature of Mrs. Turner's investments prior to 1973, her investment objectives, her alleged disability, excessive numbers of transactions in her account, which generated suspiciously high commissions, and allegations about the particular conduct of defendant Harper in particular circumstances. The amended complaint contains lists of all transactions in Mrs. Turner's accounts, including dates and the prices at which the securities were bought and sold. There are also allegations about specific misrepresentations made by defendant Harper.

In *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), the Supreme Court held that an action brought under Rule 10b–5 required an allegation of "scienter" which was defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Id.* at 193, n. 12, 96 S.Ct. at 1380, n. 12. Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The purpose of this requirement is to give the defendant fair notice of exactly what the charge against him consists of in order that he may fairly answer the charge. Because a claim of fraud is so much more amorphous than, for example, a claim of battery, it is often more difficult for a defendant to know exactly what conduct of his the plaintiff believes constitutes fraud. Rule 9(b) therefore requires a greater degree of particularity where claims of fraud are made than where other, less amorphous, allegations are made.

Given the abundant detail now presented by the amended complaint, exhibits, and affidavits, the court finds that plaintiff has pleaded her claims of fraud with the particularity required by Rule 9(b).

## IV. STATUTE OF LIMITATIONS.

Defendants urge that plaintiff's federal securities claims should be barred by the statute of limitations. Neither section 10(b) nor Rule 10b–5 expressly provides a statute of limitations governing actions brought for their violation. Federal courts therefore have looked to the "most closely analogous" state law for determining the appropriate statute of limitations. *Diamond v. Lamotte,* 709 F.2d 1419 (11th Cir. 1983). In conducting this comparison, the courts have focused on the nature of the wrong plaintiff is claiming, the nature of the remedy he seeks, and against whom the state statute allows him to recover. *See McNeal v. Paine, Webber, Jackson & Curtis, Inc.,* 598 F.2d 888 (5th Cir.1979). Although there was some early confusion on the subject, it is now well established that the appropriate statute of limitations for an action brought under Rule 10b–5 is the two-year statute of limitations of the Georgia Securities Act. *Diamond v. Lamotte, supra.* Plaintiff concedes this general proposition, but relies heavily on *McNeal v. Paine, Webber, supra,* for the proposition that for churning actions brought under Rule 10b–5 the appropriate statute of limitations is the four-year common law statute of limitations. It is true that the *McNeal* court applied the four-year statute of limitations to a churning action brought under Rule 10b–5. However, the court's express reason for applying the common law statute of limitations was that the Georgia Securities Act of 1957 was different in several material respects from the federal securities acts:

> In concluding that the cause of action available under Georgia's general fraud statute, rather than that available under the Georgia Securities Act of 1957, most closely resembles the 10b–5 cause of action relied upon here, we find determinative the fact that McNeal seeks damages against a broker, on account of alleged churning of his account, and does not seek rescission from an actual purchaser or seller of securities. Although the language of section 11 of the Georgia Securities Act of 1957 mimics that of Rule 10b–5 in prohibiting employment of "any device, scheme or artifice to defraud," the remedy made available by section 13 is expressly limited to an action for rescis-

sion by a purchaser against a seller. As such, the remedy is ineffective to a 10(b) plaintiff such as McNeal, who was allegedly injured by Paine-Webber's actions as an agent rather than as a principal. For that reason, McNeal could not frame his action as one for rescission. Although McNeal sought damages in an amount equal to the total decline in value of his account during the period in which the churning allegedly occurred, and thus sought restoration to the status quo ante, the normal effect of rescission, it is not clear that in a churning case damages of that sort are available. Any similarity between the damages remedy available to McNeal under section 10(b) and the rescission remedy available under the Georgia Securities Act of 1957 is therefore, at best, uncertain. 598 F.2d at 893, 894. Although the Georgia Securities Act of 1957 had already been replaced in toto by the Georgia Securities Act of 1973 at the time McNeal was decided, the court based its decision on the earlier act because that was the act in effect at the time the cause of action arose. 598 F.2d at 892 n. 9. The court expressly noted that the same result might not obtain under the 1973 Act:

> We note, in passing, that the Georgia Securities Act of 1957 was replaced, *in toto* by the Georgia Securities Act of 1973, Ga.Code Ann. §§ 97–101 *et seq.* (1976).... However, as the parties apparently do not dispute, in determining the statute of limitations applicable to McNeal's claim under section 10(b), we look to state law as it existed when the cause of action accrued, in this case September 3, 1973, when the alleged churning was discovered....

> It is undeniably untidy to insist that the statute of limitations applicable to a federal cause of action vary from time to time dependent upon changes in local law.... That circumstance, however, is an unavoidable side effect of the basic rule requiring application of state statutes of limitation. *Id.*

The 1973 Act is different in important ways from the 1957 Act. The two critical and determinative concerns of the *McNeal* court are no longer present under the 1973 Act. First, unlike the 1957 Act, the current statute is not limited to an action for rescission. Second, under the 1973 Act one may assert a claim against agents as well as against a principal. The Act imposes liability not just upon sellers but upon "any person who violates subsection (a) of Code Section 10–5–12." The factors which the *McNeal* court found determinative no longer being present, this court has no difficulty finding that the most closely analogous state statute for a Rule 10b–5 churning action is the Georgia Securities Act of 1973. This court holds therefore that the two-year statute of limitations of the Georgia Securities Act of 1973 applies to churning claims asserted under section 10(b) and Rule 10b–5.

 Holding that a two-year statute of limitations governs this action does not end the inquiry, however. The court must next decide when the statute of limitations began to run. Defendants have argued that the statute began to run on the date of the last transaction in Mrs. Turner's security account, but this is clearly erroneous. When a statute of limitations governing a federal cause of action begins to run is a matter of federal, not state, law. *Azalea Meats, Inc. v. Muscat,* 386 F.2d 5, 8 (5th Cir.1967). It is well established that the statute of limitations in a federal securities case does not begin to run until the plaintiff knew or, by the exercise of reasonable diligence, should have known of the alleged violation. *Diamond v. Lamotte, supra.* All of the alleged churning occurred prior to the closing of Mrs. Turner's account in July of 1979. Defendant has offered evidence that Mrs. Turner was not only lucid but aggressively involved in the trading in her account. Plaintiff, however, has disputed this and offered some evidence that Mrs. Turner was not competent to conduct her own affairs. Because this creates a question of fact, the court cannot say that the statute of limitations began running during Mrs. Turner's lifetime.

The next question is when the statute began running against Mrs. Turner's estate. Mrs. Jonabelle Conway-Carter was Mrs.

Turner's accountant and close friend during the last years of Mrs. Turner's life. She was intimately involved with Mrs. Turner's financial affairs and helped her prepare her tax returns. She was aware of all of the factors which formed the basis of plaintiff's churning claim prior to Mrs. Turner's death. Shortly after Mrs. Turner's death Mrs. Conway-Carter was named by the probate court as the temporary administratrix for Mrs. Turner's estate. She qualified as the executrix on May 28, 1981. The plaintiff in this case, Keren Miller, filed this action on January 19, 1982. She became administratrix when Mrs. Conway-Carter resigned on May 25, 1982. Plaintiff Miller was granted letters of administration with will annexed, giving her "full power to collect the remaining assets" of Mrs. Turner, on June 23, 1982.

 There are two questions to be resolved here. First, did the statute of limitations begin running when Mrs. Conway-Carter qualified as a temporary administratrix? Second, did the filing of the suit on January 19 by a party with no standing to represent the estate toll the running of the statute of limitations against the estate? The first question is relatively easy to answer. Although a federal court looks to federal law to determine when a federal cause of action accrues, the court should apply state law providing for the tolling of statutes of limitations. *Louviere v. Shell Oil Co.,* 509 F.2d 278 (5th Cir.1975), *cert. denied,* 423 U.S. 1078, 96 S.Ct. 867, 47 L.Ed.2d 90 (1976). Under Georgia law, the fact that an estate is unrepresented tolls the statute of limitations. O.C.G.A. § 9–3–92. Although a temporary administratrix may file an action for the collection of debts owed the decedent, O.C.G.A. § 53–7–103, she is not considered a representative of the estate for the purposes of the tolling provision. *Deller v. Smith,* 250 Ga. 157, 296 S.E.2d 49 (1982). Thus, the statute of limitations was tolled from the time of Mrs. Turner's death until the appointment of Mrs. Conway-Carter as permanent administratrix on May 28, 1981. Even if the January 19, 1981 filing of this action is considered a nullity and the complaint is not

considered filed until June 23, 1982 (the date the present plaintiff was granted letters testamentary) the two-year statute of limitation had not run.

Although the court must deny defendants' motion for summary judgment, this does not mean that the statute of limitations has not in fact run. The question of whether Mrs. Turner knew or should have known about the conduct of defendants remains open. If the evidence on trial shows conclusively that Mrs. Turner did know or should have known about defendants' conduct, then the statute of limitations will be held to have begun running at that time and a directed verdict may be proper. At this point, however, her competency is a material fact in dispute, and it cannot be said that defendants are entitled to judgment as a matter of law. Their motion for summary judgment is therefore DENIED.