United States Court of Appeals,

Fifth Circuit.

No. 91–1734.

Andrew L. SMITH, individually and derivatively on Behalf of Smith Protective Services, Inc., Plaintiff–Appellant,

v.

R. Jack AYRES, et al., Defendants,

R. Jack AYRES, Defendant–Appellee.

Nov. 23, 1992.

Appeal from the United States District Court for the Northern District of Texas.

Before WISDOM, REYNALDO G. GARZA, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Andrew Smith appeals from the district court's dismissal of his class action securities fraud claim and his stockholder derivative action. We affirm the trial court's decision in all respects.

## BACKGROUND

The instant appeal is but another chapter in a protracted internecine feud among Coralie Smith (mother of Andrew, Clayton, and Mark), Andrew Smith, Clayton Smith, and Mark Smith, principals or former principals of Smith Protective Services (SPS). At this point, Andrew is pursuing Jack Ayres, General Counsel and Director of SPS, in a derivative suit and as assignee of the company's Rule 10b–5 securities fraud claims. A fuller recitation of the facts may be found in the earlier opinion, in which this court reversed the first dismissal of the shareholder derivative claim and affirmed the dismissal of related claims. *Smith v. Ayres,* 845 F.2d 1360, 1361–63 (5th Cir.1988).

The trial court originally dismissed Andrew's complaint on the grounds that a state court judgment deprived Andrew of his stock ownership in SPS, thereby defeating his standing to bring a derivative action on behalf of SPS. Because the state court judgment had later been reversed by the Texas Court of Appeals, this court remanded the derivative action for further consideration. On remand, Ayres reasserted his claim that Andrew lacked standing to bring a derivative action on behalf of SPS. The district court granted the supplemental motion to dismiss, ruling that Andrew was not

an adequate or proper shareholder representative to bring a class action. Fed.R.Civ.P. 23.1.

Andrew alternatively claims standing based on his status as a putative assignee of securities fraud claims against Ayres. As part of the settlement agreement between Andrew and SPS (referred to by the parties as the Smith Family Peace Treaty), SPS expressly assigned any and all claims against Ayres to Andrew and granted Andrew the right to sue as assignee of such claims. Andrew retained one of the 10,000,000 shares in SPS. Under the settlement agreement, Andrew was to have no other benefits of ownership; Andrew could not participate in management, could not vote his share, could not bring other derivative suits, and was obliged to reconvey the single share to SPS if the share became unnecessary to maintain the derivative action against Ayres. In sum, Andrew's single share of stock was granted to him for the sole purpose of generating federal standing in his action against Ayres. The trial court rejected this basis for standing, ruling that Rule 10b–5 securities fraud actions are not assignable.

## STANDING AS A DERIVATIVE PLAINTIFF

In order to bring a derivative action, the shareholder plaintiff must "fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." Fed.R.Civ.P. 23.1. Determining whether the plaintiff meets this standard is firmly committed to the discretion of the trial court, reviewable only for abuse. *Zeidman v. J. Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1040 (5th Cir. Unit A 1981); *see also Larson v. Dumke,* 900 F.2d 1363, 1364 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 580, 112 L.Ed.2d 585 (1990).

Andrew's current stake in the corporation is infinitesimal; he holds 1/10,000,000 of the authorized shares. More significantly, he receives no cooperation from Mark and Clayton in his persistent litigation efforts against Ayres. Indeed, Mark and Clayton, the remaining two SPS shareholders, vigorously deny the essential allegations that form the basis for this suit, which Andrew must prove to prevail. The trial court may properly consider the degree of support a would-be shareholder plaintiff will receive from other shareholders in determining the adequacy of representation under Rule 23.1. *See Larson,* 900 F.2d at 1368.

Andrew argues that the test of adequate representation is not whether he can adequately

represent all shareholders, but whether he can adequately represent all shareholders similarly situated to himself. Since Mark and Clayton are not similarly situated, he argues that he is a class of one. Only in the rarest instances may there be a shareholder derivative action with a class of one. Such circumstances were manifest in *Larson,* in which the plaintiff was the original owner and founder of a pizza franchise operation who had sold most of his interest to others, but retained an interest of almost 25 percent. He opposed the institution of an Employee Stock Option Plan by some of the new owners and was the only stockholder who elected not to participate.

Larson filed a derivative action to force rescission of the plan, but was not joined by any other shareholders because t hey would lose money should the suit succeed. With great difficulty, and taking care to limit its holding to the narrow and precise facts before it, the Ninth Circuit allowed Larson to proceed as a class of one. *Larson,* 900 F.2d at 1369. Andrew's situation is entirely distinct. Andrew was not the individual who created, nurtured, and operated SPS from inception. He retained only a negligible interest in SPS. Moreover, in *Larson,* the other shareholders were opposed to Larson's suit because Larson's success would ultimately injure them financially whether or not it benefitted the corporation. Such is not the case here. Mark and Clayton, principals and owners of virtually 100% of SPS, simply fundamentally disagree with Andrew on what is good for the corporation.

A plaintiff in a shareholder derivative action owes the corporation his undivided loyalty. The plaintiff must not have ulterior motives and must not be pursuing an external personal agenda. Whether or not such a personal agenda exists is determined by the trial court, and we will not reverse its determination absent clear error. In deciding this question, the court may properly consider the amount of the plaintiff's stake in the corporation as balanced against his interest and how the litigation may affect his external interests. *Blum v. Morgan Guaranty Trust Co.,* 539 F.2d 1388, 1390 (5th Cir.1976); *see also Halsted Video, Inc. v. Guttillo,* 115 F.R.D. 177, 180 (N.D.Ill.1987).

Andrew has an unmistakable personal and professional dispute with Ayres. His brief is peppered with vituperative epithets, pugilistic metaphors, and descriptions of Ayres as "satanic" and "evil." Andrew and Ayres are on opposite sides of the emotionally charged feuds between the

Browning and the Holloway families. Ayres represents the Brownings' interests and Andrew represents the Holloways' interests. A catalog of the various lawsuits between these two parties and their affiliates would consume well over a full page. *See generally In the Matter of Holloway,* 955 F.2d 1008 (5th Cir.1992); *Browning v. Navarro,* 923 F.2d 377 (5th Cir.1991). While those lawsuits bear no direct relationship to the instant case, they suggest the virulent antagonism Andrew holds for Ayres. The trial court may properly consider the plaintiff's vindictiveness toward the defendant in determining whether the plaintiff is an adequate representative of the stockholders. *See Davis v. Comed, Inc.,* 619 F.2d 588, 593–94 (6th Cir.1980). For example, Andrew has stated that he is committed to "ruin ten years of [Ayres' life], because I'm going to be sure that Pat Holloway prevails ... and he—if he thinks this is even the end of the tenth round, I mean we're—we're not even in the first round." As was stated in *Blum,* the trial court should beware allowing a derivative suit to proceed where the "representative could conceivably use the derivative action as "leverage' in other litigation...." *Blum,* 539 F.2d at 1390. The district court did not abuse its discretion in concluding that Andrew does not qualify as a fair and adequate representative of shareholder interests under Rule 23.1.

### ASSIGNMENT OF SPS'S 10b–5 CLAIM

Andrew also claims standing on the basis of the express assignment of SPS's right to sue Ayres. Andrew argues that the generally accepted rule of non-assignability of Rule 10b–5 claims is not applicable to the instant case because he received a direct and express assignment and does not rely on an automatic assignment which travels with his single share of stock.[1] As far as we can tell, Andrew's is a novel claim. Ayres responds that 10b–5 claims are personal and may never be assigned. Ayres warns of dire consequences if we accept Andrew's argument, suggesting that to allow the assignment to create standing would presage the development of a futures market in Rule 10b–5 claims.

The guidepost case determining standing rules for 10b–5 actions is *Blue Chip Stamps v.*

---

[1] Indeed, Andrew's "ownership" of a single share of stock has no bearing on the assignability of the Rule 10b–5 action. His stock share may crack open the door to a derivative action, but the assignment must rise and fall on its own.

*Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). The *Blue Chip Stamps* Court adopted the venerable *Birnbaum* Rule, established in *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir.), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), in which the Second Circuit restricted Rule 10b–5 actions to persons who are either purchasers or sellers of securities. *Blue Chip Stamps,* 421 U.S. at 730–31, 95 S.Ct. at 1917. The *Blue Chip Stamps* decision was intended to tightly restrict the availability of Rule 10b–5 actions. Many courts have relied upon this premise to hold that 10b–5 actions are not automatically assigned when the security is sold. *See, e.g., In re Nucorp Energy Securities Litigation,* 772 F.2d 1486, 1490 (9th Cir.1985); *Soderberg v. Gens,* 652 F.Supp. 560, 564 (N.D.Ill.1987); *In re Saxon Securities Litigation,* 644 F.Supp. 465, 470–72 (S.D.N.Y.1985); *Rose v. Arkansas Valley Environmental & Utility Authority,* 562 F.Supp. 1180, 1189 (W.D.Mo.1983). Only one court has held an express assignment of a 10b–5 claim to be valid. *AmeriFirst Bank v. Bomar,* 757 F.Supp. 1365, 1371 (S.D.Fla.1991). The Court of Appeals for the Second Circuit has opined in dicta that an express assignment does not violate the strict construction philosophy of *Blue Chip Stamps. Lowry v. Baltimore & Ohio R.R. Co.,* 707 F.2d 721 (3d Cir.) (*en banc* ) (eight member panel produced three opinions, six of the eight judges recognized at least the possibility of an express assignment), *cert. denied,* 464 U.S. 893, 104 S.Ct. 238, 78 L.Ed.2d 229 (1983). *See also,* Note, *Express v. Automatic Assignment of Section 10b Causes of Action,* 1985 Duke L.J. 813, 823 (express assignment is not inconsistent with strict purchase-or-sale rule of *Blue Chip Stamps* ).

The *Blue Chip Stamps* decision to narrow Rule 10b–5 standing was based principally on two policy considerations, both of which guide our decision. First, the Court looked to Congressional intent behind section 10(b) of the Securities Exchange Act of 1934. The Court found that Congress was concerned with blackmail, nuisance, and strike suits, and drafted the Act to circumscribe the class of plaintiffs who may sue under the Act for the very purpose of eliminating such suits. 421 U.S. at 740–41, 95 S.Ct. at 1927–28. The Court's second concern centered on the evidentiary problems inherent in allowing a non-purchaser or non-seller to bring a Rule 10b–5 action. 421 U.S. at 741–43, 95 S.Ct. at 1928–29. The Court was particularly concerned that such suits would turn on "self

serving testimony ..., protracted discovery, [and bear] little chance of reasonable resolution by pre-trial process." *Virginia Bankshares, Inc. v. Sandberg,* ––– U.S. ––––, ––––, 111 S.Ct. 2749, 2765, 115 L.Ed.2d 929 (1991) (citing *Blue Chip Stamps,* 421 U.S. at 742–43, 95 S.Ct. at 1928–29). The district court noted that "a particular concern here is the risk that this derivative action will be used as a weapon in Andrew's arsenal rather than a device for the protection of all shareholders" and that "Andrew's personal antagonisms are a major motivation behind this lawsuit." In sum, this action bears all the hallmarks of a strike or nuisance suit, the very actions which the *Blue Chip Stamps* decision seeks to reduce or eliminate. Moreover, Andrew must tackle potentially insuperable evidentiary obstacles in proving the merits of his case. Mark and Clinton, the two majority shareholders in SPS, have unequivocally denied the allegations that form the crux of Andrew's suit. Andrew must necessarily rely heavily on his own "self-serving testimony," and the action bears "little chance of reasonable resolution by pre-trial process."

An assignee, Andrew falls squarely within the type of remote purchasers whose 10b–5 actions are discouraged by *Blue Chip Stamps* and later decisions relying thereon. This court has previously held that Andrew was not affected by any fraud because he voted against issuing shares to Clayton, the action complained of in this suit. *See Ayres,* 845 F.2d at 1364. Andrew secured the assignment of SPS's claims against Ayres and maintains "ownership" of a single share of stock for the express purpose of defeating doctrines which otherwise would preclude his standing to bring this action. His hope is in vain; form will not triumph over substance here. *See Goldberg v. Touche Ross & Co.,* 531 F.Supp. 86, 88 (S.D.N.Y.1982) (assignment of 10b–5 action could not be used to defeat federal law prohibiting indemnity actions under Rule 10b–5).

## CONCLUSION

We need not resolve and reserve for another day whether under other circumstances, some Rule 10b–5 claims may be expressly assigned. In this case, however, the trial court did not err in dismissing the claim based upon the purported assignment of the Rule 10b–5 action where the assignment appeared to have been made for the purpose of creating standing and pursuing a vexatious lawsuit. Nor did the court abuse its discretion in finding that Andrew was not a proper class action

representative.[2]  Andrew's request that the case be reassigned on remand to a different district court judge is without merit but in any event mooted by our affirming the judgment of dismissal.

AFFIRMED.

---

[2]Andrew's state law claims are not properly before this court, having been dismissed earlier in the action and such dismissal upheld by a prior panel.  *See Smith v. Ayres,* 845 F.2d at 1366 (dismissal of all claims affirmed, save only the derivative claim).