**Lane McNAMARA, et al., Plaintiffs,**

v.

**BRE–X MINERALS LTD.,
et. al. Defendants.**

**No. 5:97–CV–159.**

United States District Court,
E.D. Texas,
Texarkana Division.

Oct. 3, 2002.

Order Denying Reconsideration
Nov. 20, 2002.

---

H Lee Godfrey, Susman Godfrey LLP, Houston, Damon Young, Young Pickett & Lee, A Paul Miller, Miller James Miller & Hornsby, Texarkana, R Paul Yetter, Yetter & Warden, James T Southwick, Susman Godfrey LLP, Houston, Steven J Toll, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Michael C Spencer, Hynes & Lerach LLP, New York, NY, Thomas Robert Ajamie, Schirrmeister Ajamie, Houston, U Seth Ottensoser, Milberg Weiss Bershad Hynes & Lerach LLP, Adam R Gonnelli, Jeffrey G Smith, Peter W Smith, Wolfe Haldenstein Adler Freeman & Herz LLP, New York, NY, Robert C Schubert, Schubert & Reed LLP, San Francisco, CA, Murray Lewis, Matthew J Ide, Cohen Milstein Hausfeld & Toll, Seattle, WA, Curt P Beck, James S Notis, Abbey Gardy LLP, New York, NY, Guy A Wilson, Worthington & Worthington, Santa Rosa, CA, Charles Robert Eskridge, III, Susman Godfrey LLP, Houston, Edward Miller, Keeney Anderson Miller James & Miller, Texarkana, for Lane McNamara, On behalf of himself and all others similarly situated, Reuven Randall Singer, On behalf of themselves and others similarly situated, All Plaintiffs, Bruce Flint, plaintiffs.

John Anderson Gilliam, Hawkins Parnell & Thackston, Dallas, Andrius R Kontrimas, Jenkens & Gilchrist, Houston, John Robert Mercy, Mercy Carter Tidwell & Elliott, Texarkana, Karen Patton Seymour, Tiffany M Erwin, D Stuart Meiklejohn, Sharon Nelles, Sullivan & Cromwell, New York, NY, Preston Worley McGee, Flowers Davis LLP, Tyler, Gary D Grimes, Grimes & Craytor, Johnny Paul Arnold, Attorney at Law, Texarkana, David E McCraw, Clifford Chance Rogers & Wells, Andrew T Solomon, Sullivan & Worcester, New York, NY, Winford L Dunn, Jr, Dunn Nutter & Morgan, Texarkana, AR, Eric J R Nichols, Beck Redden & Secrest LLP, Houston, John Hess McElhaney, Locke

Liddell & Sapp, Dallas, John David Crisp, Crisp Boyd Poff, Texarkana, Mark Douglas Wegener, Martin Cunniff, Howrey Simon Arnold & White LLP, Washington, DC, for John B Felderhof, Jeannette Walsh, On behalf of themselves and others similarly situated, T Stephen McAnulty, John B Thorpe, Rolando C Francisco, Hugh C Lyons, Paul M Kavanaugh, Kilborn Engineering Pacific Ltd, Kilborn Engineering Pacific Ltd, P.T. Kilborn Pakar Rekayasa, An Indonesian Company, Barrick Gold Corporation, Jeannette Walsh, Executor of the estate of David Walsh, defendants.

## *ORDER*

FOLSOM, District Judge.

### I. BACKGROUND

In an attempt to remove Mr. John Quick and Mr. Tom Jurevick as lead plaintiffs for the proposed NASDAQ class in this matter, Defendants filed a motion requesting this Court to deem the following facts established as a matter of law:

Before the Court are Defendants' Motion to Deem Facts and to Preclude Evidence (Doc. No. 631) and Plaintiffs' Motion to Withdraw and Substitute Certain Lead Plaintiffs (Doc. No. 647). Having considered the motions and the responses, the Court finds that Defendants' Motion to Deem Facts and Preclude Evidence should be **DENIED as MOOT** and that Plaintiffs' Motion to Withdraw and Substitute Certain Lead Plaintiffs is well taken and should be **GRANTED** with regard to McNamara, Jurevick, and Quick as Defendants do not oppose Plaintiffs' withdrawing these lead plaintiffs. With regard to the remainder of Plaintiffs' Motion to Withdraw and Substitute, the Court finds that Marc Lieberman does not have standing to replace his father, Melvyn B. Lieberman as lead plaintiff, and Plaintiffs' motion in respect to him should be **DENIED.**

1. Neither Mr. Quick nor Mr. Jurevick has in any manner directed or supervised the conduct of this litigation by Lead Counsel.

2. Neither Mr. Quick nor Mr. Jurevick was, at the time of their appointment as Lead Plaintiff, or is now willing or able to direct or supervise the conduct of this litigation by Lead Counsel.

Defendants also requested that the Court preclude Plaintiffs from presenting any evidence regarding the alleged adequacy of Mr. Quick or Mr. Jurevick as Lead Plaintiffs.

However, along with a response to Defendant's motion, Plaintiffs filed an additional motion to withdraw Mr. Jurevick, Mr. Quick, and Lane McNamara as Lead Plaintiffs and to remove Dr. Melvyn Lieberman and substitute his son, Marc Lieberman, as Lead Plaintiff in his capacity as representative of the estate of his father, Dr. Melvyn B. Lieberman.

### I. BACKGROUND

In October of 1997, this Court appointed seven U.S. and seven Canadian purchasers of Bresea and Bre–X common stock to act as Lead Plaintiffs in this case. One of those appointed, Dr. Melvyn B. Lieberman, has passed away; two of those appointed, Mr. Jurevick and Mr. Quick, are in poor health; one more of those appointed, Lane McNamara, has overwhelming business obligations that hinder his ability to be an effective lead plaintiff. Plaintiffs seek to withdraw the four men as Lead Plaintiffs and also to substitute Marc Lieberman in place of his deceased father. All plaintiffs wish to continue to pursue their claims but do not wish to do so in the capacity of lead plaintiffs.

## II. ARGUMENT

Defendants do not oppose the withdrawal of McNamara, Jurevick, and Quick but do oppose the substitution of Marc Lieberman for his late father, Dr. Melvyn Lieberman. Marc Lieberman is co-executor of his father's estate, co-trustee of his father's living trust, and beneficiary of his father's IRA account, which held his Bre–X or Bresea stock investments. Marc Lieberman was appointed by the Melvyn B. Lieberman Trust (the "Trust") to pursue claims on its behalf. First, Defendants claim that neither Marc Lieberman, nor his father's trust, nor his father's estate has any claim to assert since Melvyn Lieberman's Rule 10b–5 claims do not survive his death. Second, Defendants contend that trustees and executors cannot be lead plaintiffs or class representatives as a matter of law. Third, Defendants contend that Marc Lieberman does not satisfy the Private Securities Litigation Reform Act of 1995 (PSLRA) requirements for lead plaintiffs. Fourth, and finally, Defendants assert that Melvyn Lieberman was an inadequate lead plaintiff, and therefore Marc Lieberman is an inadequate lead plaintiff.

## III. ANALYSIS

### A. Background

At the Class Certification hearing, Marc Lieberman at one point in his testimony indicated that he was not acting in his capacity as a co-executor of his father's estate. Specifically, he stated, "I want to repeat, I am not here in my capacity as a co-executor, but I am here in my capacity as co-trustee of the testamentary trust." (Tr., Vol. 1 at 54,16–19.) However, later in his testimony, Lieberman softened his formerly adamant tone and changed his position. At that point Lieberman stated, "I probably jumped the gun a little bit by saying exactly which capacity I was appearing here today. I know that I am supposed to be here in both." (Tr., Vol. 1 at 104,10–18.) Because Defendants have challenged Lieberman's authority to act in either capacity (as trustee or executor), the Court shall determine the nature in which capacity, if any, Lieberman may properly act.

Melvyn Lieberman's Will disposed of "all property, real, personal and mixed, wherever situated, which [he is] entitled to dispose of by Will." (Def. Ex. 176 at 1.) Melvyn Lieberman's Will gave "the residue of the property disposed of by this Will, IN TRUST, to the Trustees who are acting immediately after [his] death under the TRUST." Def. Ex. 176 at 2. Melvyn Lieberman's Will did not specifically transfer his interest in any claim arising from the purchase of his shares of Bre–X or Bresea. (Def.Ex. 176.)

On November 18, 1997, Melvyn Lieberman created a Trust into which he transferred *inter alia* "[a]ll cash, investments, stocks, bonds, and similar assets standing in the name of MELVYN B. LIEBERMAN." (Def. Ex. 175 at 23.) By operation of this document all shares of Bre–X and Bresea Melvyn Lieberman owned were transferred to the Trust on November 18, 1997. Melvyn Lieberman's Trust gave him a life interest in all of the income and principal of the Trust. The Trust did not specifically transfer his interest in any claim arising from the purchase of his shares of Bre–X or Bresea. (Def.Ex. 175.)

Upon his death in December of 2000, the assets of the Trust poured into a Marital Trust and a Residual Trust. (Def. Ex. 60 at 128:9–22; Def. Ex. 174 at 1; Def. Ex. 176 at 2.) The assets of the Residual Trust were divided into separate equal shares between each of Melvyn Lieberman's surviving children, Marc and Jennifer, who each have received some funds. (Def. Ex. 60 at 128:12–15; Def. Ex. 175 at 6.)

The balance of Melvyn Lieberman's assets and of the Trust's assets were placed

in Trust for Mrs. Lieberman during her lifetime. She receives the income during her lifetime. Mrs. Lieberman also may receive as much of the principal, "as the Trustee, in the Trustee's discretion, deems necessary for SANDRA's health, support and maintenance." (Def. Ex. 175 at 5.) Any amount remaining upon her death shall be distributed to Marc and Jennifer Lieberman. (Def. Ex. 60 at 128:16–22.)

Proceeds of litigation arising from claims of Melvyn Lieberman that survived his death, if any, would be added to the corpus of the Trust to be used first by the lifetime beneficiary, Mrs. Lieberman, and upon her death to be distributed in equal shares to Marc and Jennifer Lieberman or their then surviving issue. (*Id.* at 57:17–22.) The Will and Trust each are governed by California law. (Def. Ex. 175 at 19; Def. Ex. 176 at 6.)

### B. *Blue Chip*

■ The United States Supreme Court in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 727, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) addressed, "what limitations there are on the class of plaintiffs who may maintain a private cause of action for money damages for violation of Rule 10b–5." *Blue Chip* dictates that only "purchasers" and "sellers" of securities may bring claims under Rule 10b–5. *Id.* at 731, 95 S.Ct. 1917. Although the Court acknowledged that the limitation on the plaintiff class could perhaps prevent some deserving plaintiffs from recovering under 10b–5, the Court found that the advantages outweighed that disadvantage. *Id.* at 739, 95 S.Ct. 1917. The Court stated, as the policy behind this holding, the need to prevent securities cases, "which by objective standards may have very little chance of success at trial [but have] a settlement value to the plaintiff out of any proportion to its prospect of success at trial . . . . The very pendency of the lawsuit may frustrate or delay normal business activity of the

defendant." *Id.* at 741, 95 S.Ct. 1917. The Court found that the virtue of the holding is that, "it limits the class of plaintiffs to those who have at least dealt in the security to which the prospectus, representation or omission relates." *Id.* at 746, 95 S.Ct. 1917. The Supreme Court's holding in *Blue Chip* limiting 10b–5 claims to those who had "active participation in the marketing transaction," is instructive in the present matter. *Id.* at 739, 95 S.Ct. 1917.

### C. The Estate

Defendant contends Melvyn B. Lieberman's 10b–5 claims do not survive his death pursuant to the U.S. Supreme Court's ruling in *Blue Chip* which dictates that only "purchasers" and "sellers" of securities may bring claims under Rule 10b–5. Plaintiff, on the other hand, argues that the *Blue Chip* holding does not prevent the administrator of an estate from filing or pursuing a 10b–5 claim on behalf of the estate he or she represents. *See Miller v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 572 F.Supp. 1180, 1183 (N.D.Ga.1983).

*Blue Chip* clearly dictates that Marc Lieberman has no standing to assert claims under 10b–5 on his own behalf because he did not "purchase" or "sell" the stock at issue. However, Marc Lieberman does not seek to assert claims on behalf of himself. He seeks to assert claims on behalf of his deceased father as the legal representative of his estate, and *Blue Chip* does not address that issue. Defendants cite the Fifth Circuit case of *Smith v. Ayres*, 977 F.2d 946 (5th Cir.1992) for the proposition that 10b–5 claims are not assignable and do not pass to the beneficiaries of a will or trust. The *Smith* Court, however, stated that it, "need not resolve and reserve for another day whether under any circumstances some Rule 10b–5 claims may be expressly assigned." *Smith*, 977 F.2d at 950. It simply held

that the trial court did not err in dismissing a Rule 10b–5 action where the assignment, "appeared to have been made for the purpose of creating standing and pursuing a vexatious lawsuit." *Id.* Furthermore, the *Smith* Court did not address whether an administrator may assert 10b–5 claims on behalf of an estate.

■ The Court in *Miller v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 572 F.Supp. 1180 (N.D.Ga.1983), addressed the specific issue present in the case before this Court and held that a 10b–5 claim does not abate at death and that the administrator of an estate has the right to assert the claim on behalf of the estate, even though that same administrator would not have the right to individually assert a 10b–5 claim as to inherited stock. Additionally, this principle has been recognized in JACOB'S LITIGATION PRACTICE UNDER RULE 10b–5 § 284 (2001). The Court finds no ruling on this issue in the Fifth Circuit but believes the holding of the *Miller* court to be sound and reasonable considering *Blue Chip* and the Fifth Circuit's limited holding in *Smith.* The Court therefore finds that the right to assert a 10b–5 claim does not abate at death and may be made by the administrator of a decedent's estate.

Having concluded that an estate representative is not precluded from asserting the 10b–5 claims on behalf of Dr. Melvyn Lieberman's estate, the Court must next consider whether Marc Lieberman in fact has the authority, as a co-executor, to act on behalf of his father's estate. Plaintiffs admit that Marc Lieberman is the co-executor of his father's estate with his sister, Jennifer Lieberman. (Pl. Mot. at 2.) By statute in California, when there are two co-executors of an estate, "both must concur to exercise a power." CAL. PROB. CODE § 9630(a)(1). Plaintiffs have offered no evidence that Jennifer Lieberman has indicated either a willingness to assist in the prosecution of any claims of Dr. Melvyn Lieberman's estate or that she has made any agreement that Marc Lieberman's prosecution of those claims should proceed. Considering Plaintiffs' failure to show consent of both executors of the estate, the Court finds that Marc Lieberman is without authority to act on behalf of his father's estate.

Furthermore, even though not raised by the parties, the Court is concerned that because the stock at issue was transferred entirely into trust, the estate of Melvyn Lieberman has no recognizable interest in the stock at all. However, having reached the above conclusion, the Court shall not address the issue.

## D. The Trust

Although Plaintiffs seem to abandon any claim that Marc Lieberman has standing to bring the 10b–5 claims in his capacity as trustee, as they have made no argument on that point in their proposed findings of fact and conclusions of law, the Court will address the issue out of an abundance of caution. In their reply brief, Plaintiffs do make a general reference to two district court cases from other circuits: *Kane Associates v. Clifford,* 80 F.R.D. 402 (E.D.N.Y.1978); *Seiden v. Nicholson,* 69 F.R.D. 681 (N.D.Ill.1976). The Court has examined those cases, and neither addresses whether or not a trustee has standing to bring a 10b–5 claim; their focus in on whether a trustee may also serve as a class representative. The cases provide the Court no guidance in determining the facts or the particular circumstances, if any, in which a trustee has standing to bring a 10b–5 claim.

The Court has found no Fifth Circuit caselaw addressing whether a trustee has standing to bring a 10b–5 claim on behalf of the trust into which the suspect stock was placed. Under a strict reading of *Blue Chip,* however, Marc Lieberman as

trustee did not purchase or sell the stock, and he did not actively participate in the market transaction. Furthermore the trust beneficiaries did not buy or sell the stock at issue. The Third Circuit has held that when a beneficiary of a will or trust receives the securities upon which a 10b–5 claim could be based, he or she does not obtain standing to sue. *See Thomas v. Roblin Indus.*, 520 F.2d 1393, 1396 (3d Cir.1975) (noting after *Blue Chip* that a trustee, "not being a purchaser or representing a purchaser of the stock in question, lacked standing to assert the claim.") Also, the district court for the Eastern District of Louisiana has held that, "co-trustee plaintiffs lacked standing to assert these claims since they had not and indeed could not allege that they were the purchasers or sellers of a 'security,' nor had they alleged any express assignment of 10b–5 rights." *Sanderson v. H.I.G. Capital Management, Inc.*, 2001 WL 96384, \*3 (E.D.La.2001); *see also Sanderson v. H.I.G. Capital Management, Inc.*, 2001 WL 96384 (E.D.La.2001). No specific assignment of 10b–5 rights took place in the present case.

■ Although the Louisiana Court and the Third Circuit do not bind this Court, and although neither the Court nor the parties have found Fifth Circuit law addressing this issue, the Court believes that the language of *Blue Chip* taken in conjunction with the cases cited suggest that a trustee cannot bring 10b–5 claims on behalf of a trust. A trustee is not stepping into the shoes of the stock purchaser as is the estate representative. A trustee oversees the distribution and use of the trust, and a beneficiary benefits from the trust. A trustee's obligations lie with the beneficiaries. Trustees are not "purchasers" or "sellers" and do not represent the rights of "purchasers" or "sellers;" thus, they are not in the position to assert claims as trustees. Marc Lieberman, therefore, lacks the authority to bring the 10b–5

claims on behalf of the trust. Because the Court has concluded that Marc Lieberman does not have standing to bring his father's 10b–5 claims, the Court need not address Defendants' remaining arguments.

## IV. CONCLUSION

Having reached the above conclusions, the Court hereby

**ORDERS** that Defendants' Motion to Deem Facts and to Preclude Evidence (Doc. No. 631) is **DENIED** as **MOOT.** The Court further

**ORDERS** that Plaintiffs' Motion to Withdraw and Substitute Certain Lead Plaintiffs (Doc. No. 647) is **GRANTED** with regard to McNamara, Jurevick and Quick and is **DENIED** with regard to Lieberman.

**IT IS SO ORDERED.**

### *ORDER*

Before the Court is Plaintiffs' Motion for Reconsideration (Doc. No. 874). After having considered the motion, the relevant briefing, and the applicable law, the Court finds that the motion is not well taken and should be **DENIED.**

## I. BACKGROUND

On September 30, 2002, the Court entered an order, part of which denied Plaintiffs' motion to substitute Marc Lieberman as a lead plaintiff in the present case. Plaintiffs had moved to withdraw Dr. Melvyn Lieberman and substitute his son, Marc Lieberman, as Lead Plaintiff in his capacity as representative of his father's estate. After concluding that as an estate representative Marc Lieberman was not precluded from asserting 10b–5 claims on behalf his father's estate, the Court found that Marc Lieberman did not have the *authority* to act on behalf of his father's estate as he was co-executor of the estate with his sister, Jennifer Lieberman. By statute in California, when there are two

co-executors of an estate, "both must concur to exercise a power." CAL. PROB. CODE § 9630(a)(1). The Court found that Plaintiffs failed to show consent of both executors of the estate and that Marc Lieberman was therefore without authority to act on behalf of his father's estate. Plaintiffs have filed the present motion requesting that the Court reconsider its order.

## II. MOTION FOR RECONSIDERATION STANDARD

Motions for reconsideration are permitted only in narrow situations, primarily "to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. International Paper Co.*, 875 F.2d 468, 473 (5th Cir.1989) (quoting *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656, 665 (N.D.Ill.1982), aff'd, 735 F.2d 1367, and aff'd, 736 F.2d 388 (7th Cir.1984)); *see In re Beef Industry Antitrust Litigation*, 713 F.Supp. 971, 981 (N.D.Tex., 1988).

This Court has previously articulated this very standard in this very case in *McNamara v. Bre–X Minerals Ltd.*, 68 F.Supp.2d 759 (E.D.Tex.1999). In that instance, Plaintiffs requested reconsideration of the Court's order dismissing Canadian stockholders who purchased on Canadian exchanges and based the motion on the theory that the Court committed a manifest error of law by applying the wrong legal standard in its analysis. The Court found that there was no manifest error of law and that the Motion for reconsideration should be denied. In the present situation, Plaintiffs take a different approach in their motion for reconsideration, this time presenting the Court with previously unseen evidence.

## III. ANALYSIS

In support of their motion for reconsideration, Plaintiffs have presented the Court with the affidavit of Jennifer Lieberman as proof that she is not opposed to Marc Lieberman's acts on behalf of the estate. In her affidavit Jennifer Lieberman states that she and her brother discussed the claims arising from their father's Bre–X/Bresea stock and decided that Marc should pursue those claims, with the Court's permission, as a representative of the class. (Pl.Mt.Reconsid., Exh. A) Additionally, Jennifer Lieberman stated, "[i]f I had known that my consent was seriously questioned, I would have provided evidence of my consent at an earlier time." Plaintiffs contend that this consent offered by Jennifer Lieberman solves the problem articulated by the Court and request that the Court therefore allow Marc Lieberman to serve as lead plaintiff. Defendants, on the other hand, argue that Plaintiffs' attempt at correcting the consent problem has been undertaken too late. Defendants reiterate that the purpose of a motion to reconsider is to allow the Court to correct manifest errors or review newly discovered evidence. Defendants point out that Plaintiffs have had many opportunities to obtain Jennifer Lieberman's consent and offer it to the Court but have failed to do so. Plaintiffs respond by arguing that Defendants only mentioned the necessity of Jennifer Lieberman's consent in a footnote of a brief and that Defendants sought no evidence of Jennifer Lieberman's consent during their deposition of Marc Lieberman.

First, the Court recognizes that Defendants first mentioned the lack of proof of Jennifer Lieberman's authorization in a footnote. Defendants state in footnote two of their November 10,2001 Sur–Reply Memorandum in Further Opposition to Plaintiffs' Motion to Withdraw and Substitute Certain Lead Plaintiffs that, "Marc Lieberman cannot exercise power as executor of his father's estate ....By statute in California, under whose laws the will is governed, 'where there are two personal representatives, both must concur to exercise a power.' Cal Prob.

Code § 9603(a)(1)...." The NASDAQ class certification hearing followed this briefing. During that hearing, Marc Lieberman offered the Court extensive testimony on his ability to proceed as a lead plaintiff. Not once did Plaintiffs question him regarding his co-executor's consent to his actions in this matter. Additionally, in their March 8, 2002 proposed Findings of Fact and Conclusions of Law, Defendants repeated their concern stating that, "Jennifer Lieberman has never indicated either a willingness to assist in the prosecution of any claims in Melvyn Lieberman's estate or any agreement that such prosecution of those alleged claims should proceed." Plaintiffs did not address this concern in their findings of fact or conclusions of law nor did they attempt to supplement the evidence with proof of Jennifer Lieberman's consent. Plaintiffs only submitted proof of her consent after this Court issued its ruling disallowing Marc Lieberman lead plaintiff status. Moreover, Plaintiffs attempt to argue that Defendants failed to utilize their opportunities during deposition and hearing testimony to question Marc Lieberman about his authority to act on behalf of the estate. This attempt to shift the focus from the inaction of Plaintiffs to the inaction of Defendants is improper. Plaintiffs sought to substitute Marc Lieberman for his father, and they necessarily bore the burden to show that Marc Lieberman was an adequate and proper substitute. The fact that Defendants did not attempt to help Plaintiff reach their goal is of no consequence.

Furthermore, the Court is not inclined to consider Jennifer Lieberman's affidavit as "newly discovered evidence" as Plaintiffs have not shown that the information was unavailable to them before they filed their Motion for Reconsideration. In *Waltman v. International Paper Co.,* 875 F.2d 468, 473 (5th Cir.1989), the Fifth Circuit stated that where materials were available when a party responded to the motion now poised for reconsideration, the evidence is not "newly discovered." Additionally, the court noted that even if the evidence was not available at the exact time that the motion was being considered by the Court, the party could have supplemented their motion or the evidence as soon as it became available. Likewise, this Court refuses to consider long-available evidence presented at the last minute. In the present case, Jennifer Lieberman specifically articulates the fact that she would have provided the information sooner if it would have been requested. She stated, "[i]f I had known that my consent was seriously questioned, I would have provided evidence of my consent at an earlier time."

## IV. CONCLUSION

Having reached the above conclusions, the Court hereby

**ORDERS** that Plaintiffs' Motion for Reconsideration (Doc. No. 874) is **DENIED.**