**AVIVA LIFE AND ANNUITY COMPANY and Aviva Life and Annuity Company of New York, Plaintiffs,**

v.

**Steven H. DAVIS, Stephen Dicarmine, and Joel Sanders, Defendants.**

**No. 4:12–cv–00603–JEG.**

United States District Court, S.D. Iowa, Central Division.

Signed May 19, 2014.

John T. Clendenin, Kristina M. Stanger, Nyemaster Goode PC, Des Moines, IA, Stephen E. Hudson, Alfred S. Lurey, Kilpatrick Townsend & Stockton LLP, Atlanta, GA, Helen K. Michael, Kilpatrick Townsend & Stockton LLP, Washington, DC, for Plaintiffs.

Ned H. Bassen, Kathryn A. Coleman, Christopher C. Gartman, Hughes Hubbard & Reed, LLP, Mary Beth Buchanan, Austin V. Campriello, Kathryn Emily Gebert, Bryan Cave LLP, New York, NY, Kendra Lou Mills Arnold, Matthew Whitaker, Whitaker Hagenow & Gustoff LLP, Des Moines, IA, Steven N. Serajeddini, Kevin T. Van Wart, Diana M. Watral, Kirkland & Ellis LLP, Chicago, IL, for Defendants.

## ORDER

JAMES E. GRITZNER, Chief Judge.

This matter comes before the Court on motions to dismiss by Defendants Steven H. Davis (Davis), Stephen DiCarmine (DiCarmine), and Joel Sanders (Sanders).[1] Plaintiffs Aviva Life and Annuity Company and Aviva Life and Annuity Company of New York (collectively, Aviva) resist. A hearing on the motions was conducted on March 13, 2014. Attorneys Helen Michael, Stephen Hudson, and John Clendenin appeared on behalf of Aviva. Attorney Mary Beth Buchanan appeared on behalf of DiCarmine; attorney Kathryn Coleman appeared on behalf of Sanders; and attorney Diana Watral appeared on behalf of Davis. Attorney Matthew Whitaker was present on behalf of DiCarmine, Sanders, and Davis (collectively, Defendants). The motions are fully submitted and ready for disposition.

## I. BACKGROUND

### A. Factual Background [2]

Davis, DiCarmine, and Sanders are former managers of Dewey and LeBoeuf

---

1. DiCarmine and Sanders filed a joint Motion to Dismiss and Davis filed a separate individual Motion to Dismiss. The Court will address both motions in this Order.

2. In addressing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must "accept the factual allegations of the complaint as true" and "may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (citations and internal quotation marks omitted). All facts are taken from the Complaint and any documents for which the Court has taken judicial notice, pursuant to Fed. R.Evid. 201(b)(2), including the Securities

LLP (Dewey), which was created[3] in 2007 and was, until recently, one of the country's largest law firms. Davis was the Chairman and head of the executive committee and managed Dewey's day-to-day operations, with the ability to act with the full authority of Dewey's Executive Committee and the authority to borrow funds on Dewey's behalf. DiCarmine was the Executive Director of Dewey, with broad authority over Dewey's operations. Sanders was the Chief Financial Officer of Dewey, with broad authority over Dewey's financial affairs. Davis was a partner in the law firm, whereas DiCarmine and Sanders were salaried employees.

Shortly after Dewey's inception in 2007, Dewey, through Davis as the firm's chairman, offered large compensation guarantees to many of the partners without disclosing the guarantees to the public, investors, or the rest of the partners. Dewey failed to meet profit projections in 2008, so Dewey used 2009 revenues to make payments on 2008 compensation guarantees. Profits fell again in 2009, and by 2010, Dewey owed the partners approximately $100 million. Despite these problems, Dewey continued to provide additional compensation guarantees to their partners.

In 2009 and 2010, Dewey and Defendants sought out institutional investors to purchase notes issued by Dewey. Dewey and Defendants used materials to convince investors to purchase the notes which materials allegedly did not mention compensation guarantees and materially misrepresented Dewey's true financial situation. On April 16, 2010, Aviva claims it relied on these misrepresentations in purchasing $35 million in Dewey notes (the Note Purchase Agreement).

In October 2011, DiCarmine disclosed to Dewey's partners that approximately one hundred of Dewey's three hundred partners had compensation guarantees. In January 2012, Davis disclosed to the partnership that the 2011 profits would not be distributed due to lower than expected profits and the deferred compensation due under the compensation guarantees. The news caused numerous partners to leave Dewey, and was quickly followed by additional revelations that Dewey had misstated its 2010 and 2011 financial statements and that Defendants had used Dewey's profits for questioned payments to themselves and other partners.

Aviva sold the notes in May 2012, for $19,270,000, to Sea Port Group Securities, LLC (Sea Port Group).[4] Sea Port Group in turn sold the notes to LJF Holdings.

On May 28, 2012, Dewey filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York, No. 1:12–bk–12321–MG (the Dewey Bankruptcy). The bankruptcy court confirmed Dewey's Chapter 11 liquidation plan on February 27, 2013, No. 1:12–bk–12321–ECF No. 144, and the plan became effective on March 22, 2013. LJF Holdings signed a settlement release wherein they released Dewey from any

---

and Exchange Commission Complaint filed in the United States District Court for the Southern District of New York and the Indictment returned in the Supreme Court of the State of New York, County of New York, both of which were filed on March 6, 2014, against the Defendants and other named individuals.

**3.** The final composition of this law firm resulted from the 2007 merger of the prominent

Dewey Ballantine LLP and LeBoeuf, Lamb, Green & McRae LLP.

**4.** The agreement between Aviva and Sea Port Group (Transfer Agreement) included a section describing the rights transferred from Aviva to Sea Port Group with the notes. *See infra* Section II.A.1.

and all liability on any securities claims LJF Holdings had the right to bring.

## B. Procedural Background

Plaintiffs filed the instant action in this Court on December 14, 2012, claiming Defendants violated various federal and Iowa state securities laws connected with the sale of the Dewey notes. Defendants waived service. Plaintiffs' claims against Defendants arise under §§ 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b–5 promulgated by the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5. Federal jurisdiction over these claims is established pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa(a). Supplemental jurisdiction over Plaintiffs' state law claims for violation of Iowa Code §§ 502.509(2) and (7) is established pursuant to 28 U.S.C. § 1367(a).

Pursuant to a Joint Stipulation, the Court entered an Order on March 7, 2013, allowing Defendants to file motions to transfer venue that did not constitute an appearance and providing that following the Court's resolution of those motions, Defendants would have thirty days to either answer or move to dismiss Aviva's Complaint. This Court denied Defendants' motions to transfer venue on September 9, 2013.

Defendant Davis filed his Motion to Dismiss on October 9, 2013, as did Defendants DiCarmine and Sanders in a joint motion. Plaintiffs jointly responded to Defendants' motions on November 20, 2013. Defendants filed their reply briefs on December 11, 2013, and Defendant Sanders filed a notice of additional authority on that date. Plaintiffs responded to the notice of additional authority on December 23, 2013. On March 11, 2014, Plaintiffs filed a request that the Court take judicial notice of a copy of a New York State Court indictment against Defendants and Zachary Warren (the Indictment), as well as a copy of the Securities and Exchange Commission's (SEC) Complaint against Defendants, Francis Canellas, and Thomas Mullikin in the Southern District of New York (SEC Complaint). A hearing was held in this matter on March 13, 2014, at which time the propriety of taking judicial notice of these public documents was considered, for purposes of Fed.R.Evid. 201(e), and Defendants agreed that this Court can take judicial notice of the Indictment and SEC Complaint for purposes of the present motions.

## II. DISCUSSION

### A. Article III Standing [5]

Defendants argue that Plaintiffs' Complaint should be dismissed because Plain-

---

**5.** The moving party must bring jurisdictional challenges based on the "face or on the factual truthfulness of [the claim's] averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). Facial challenges focus on the face of the complaint, and the Court must treat the motion under Rule 12(b)(1) similar to how it treats motions under Rule 12(b)(6) for failure to state a claim. *Id.* This means the Court must find the moving party "successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.* (citation omitted).

Conversely, a factual challenge allows the Court to go beyond the Complaint with re-

gard to what facts it can consider when deciding whether it has jurisdiction. *See Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). If the moving party brings a factual challenge, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," which means that "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* at 730 (internal quotation marks and quotation omitted).

tiffs lack Article III standing to bring their claims. Defendants contend that Plaintiffs are not the proper party to bring the claims at issue because Plaintiffs sold the notes and some of their rights to a third party in May 2012. The extent of this assignment is in dispute. Plaintiffs respond that when they sold the notes to Sea Port Group, they retained the right to bring the securities claims at issue. Plaintiffs direct the Court to Section A of the Transfer Agreement, to the definition of "Transferred Rights," which Plaintiffs assert only transferred those claims that are "permitted to be assigned under applicable law." Davis Mem. in Support of Mot. to Dismiss, Ex. C p. 2, ECF No. 55–4. Plaintiffs assert that because the federal securities claims at issue were not assignable under applicable law, the claims must remain with Plaintiffs under settled legal principles.

In this case, Defendants have filed a factual challenge to this Court's subject matter jurisdiction, as Defendants attached multiple exhibits to their motions to dismiss which contain factual information not included in Plaintiffs' Complaint. "[I]f subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on [his or her] own," but only if the court is not determining "an essential element of a claim for relief." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (noting that if an essential element for plaintiff's claim is at issue, the jury should determine whether the element is satisfied). This Court will therefore view all evidence provided by the parties to determine whether it has jurisdiction over Plaintiffs' claims unless it appears an essential element of a claim should be decided by a jury. Additionally, Plaintiffs "will have the burden of proof that jurisdiction does in fact exist." *Titus*, 4 F.3d at 593, n. 1 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). Plaintiffs must prove subject matter jurisdiction exists under the "preponderance of the evidence" standard. *Thompson v. Deloitte & Touche LLP*, 503 F.Supp.2d 1118, 1121 (S.D.Iowa 2007).

■ First, it is widely accepted that "federal law governs the assignability of claims under the federal securities laws." *Bluebird Partners, L.P. v. First Fidelity Bank, N.A.*, 85 F.3d 970, 974 (2d Cir.1996) (citing *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1489 (9th Cir.1985); *Lowry v. Baltimore & Ohio R.R. Co.*, 707 F.2d 721, 727 (3rd Cir.) (en banc) (Garth, J., concurring); *In re Saxon Sec. Litig.*, 644 F.Supp. 465, 473–74 (S.D.N.Y.1985); *Gulfstream III Assoc., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 437 (3rd Cir.1993)). Second, it is widely accepted that claims under § 10(b) are not automatically assigned with the sale of securities. *Id.*[6] However, as has been noted by other district courts, "[o]nly two courts have held that Rule 10b–5 claims may be expressly assigned." *Dobyns v. Trauter*, 552 F.Supp.2d 1150, 1154 (W.D.Wash.2008)

As this is a factual challenge to this Court's subject matter jurisdiction under Rule 12(b)(1), the Court has utilized the exhibits attached to Defendants' motions to dismiss and other facts alleged by the parties to determine whether it has jurisdiction. *See Arbaugh*, 546 U.S. at 514, 126 S.Ct. 1235; *Osborn*, 918 F.2d at 730.

6. *See also In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1490 (9th Cir.1985); *In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*, 755 F.Supp.2d 857, 867 (S.D.Ohio 2010); *Dobyns v. Trauter*, 552 F.Supp.2d 1150, 1154 (W.D.Wash.2008); *Farey–Jones v. Buckingham*, 132 F.Supp.2d 92, 100 (E.D.N.Y.2001); *Sanderson v. HIG P–XI Holding, Inc.*, 2000 WL 1042813, at *9 (E.D.La. July 27, 2000); *McEwen v. Digitran Sys., Inc.*, 49 F.Supp.2d 1293, 1300 (D.Utah 1999); *Small v. Sussman*, No. 94 C 5200, 1995 WL 153327, at *9–10 (N.D.Ill. Apr. 5, 1995); *AmeriFirst Bank v. Bomar*, 757 F.Supp. 1365, 1370–71 (S.D.Fla. 1991); *Soderberg v. Gens*, 652 F.Supp. 560, 564 (N.D.Ill.1987); *In re Saxon Sec. Litig.*, 644 F.Supp. 465, 470–71 (S.D.N.Y.1985); *Rose v. Ark. Valley Env. & Util. Auth.*, 562 F.Supp. 1180, 1189 (W.D.Mo.1983); *Indep. Investor Protective League v. Saunders*, 64 F.R.D. 564, 572 (E.D.Pa.1974).

(citing *Farey–Jones v. Buckingham,* 132 F.Supp.2d 92, 100–02 (E.D.N.Y.2001); *AmeriFirst Bank v. Bomar,* 757 F.Supp. 1365, 1371 (S.D.Fla.1991)); *see also In re Nat'l Century Fin. Enters., Inc., Inv. Litig.,* 755 F.Supp.2d 857, 867 (S.D.Ohio 2010) (citing *Dobyns,* 552 F.Supp.2d at 1154). The court in *Dobyns* further noted that only the Fifth Circuit had at that time held that an express assignment did not confer standing, reserving for another day whether Rule 10b–5 claims could be expressly reserved. *Id.* (citing *Smith v. Ayres,* 977 F.2d 946, 950–51 (5th Cir. 1992)).

The Supreme Court case shaping the discussion as to this issue is *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 742–43, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). In *Blue Chip,* the Court accepted the *Birnbaum* rule, which "limits the class of plaintiffs [in securities cases] to those who have at least dealt in the security to which the prospectus, representation, or omission relates .... by way of purchase or sale." *Id.* at 747, 95 S.Ct. 1917 (referring to *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir.1952)). There were two concerns noted by the Supreme Court in its acceptance of the *Birnbaum* limitation on individuals with standing to assert securities claims: (1) "the danger of vexatious litigation which could result from a widely expanded class of plaintiffs under Rule 10b–5," and (2) evidentiary concerns with plaintiffs not directly connected to the alleged fraudulent conduct or transaction. *Id.* at 740–42, 95 S.Ct. 1917.

In *Farey–Jones,* a limited partnership had assigned its 10b–5 claim to its general partner. 132 F.Supp.2d at 101. The limited partnership only ever had one general and one limited partner, so it was a factually unique situation in which the court found that "due to the unusual circumstances of the instant express assignment, there is no likelihood that the assignment would deprive the true seller of the securities, who allegedly suffered the fraud, of its cause of action and unduly benefit someone who had not been harmed." *Id.* (citation and quotation omitted). Additionally, the court reasoned that allowing the assignee to assert the securities claim would not implicate either of the concerns set forth in *Blue Chip,* as the general partner was involved in the securities transaction between the limited partner and the defendant, and there was no risk of strike or nuisance suits. *Id.* at 101–02.

In *AmeriFirst,* the court dealt with a court-approved settlement agreement related to five class action lawsuits between AmeriFirst's shareholders and AmeriFirst, wherein the agreement required AmeriFirst to sue its officers, directors, and outside accountants. 757 F.Supp. at 1369. The class promised to assign an undivided 20 percent interest to AmeriFirst in the securities claims alleged in the class action, and AmeriFirst promised in exchange to assign to the class an undivided 25 percent interest in AmeriFirst's claims. *Id.* The court found that the *Blue Chip* concerns were not implicated, as "[p]ermitting AmeriFirst a cause of action under Rule 10b–5 based on the express assignment from the settlement class will not encourage 'strike' suits," and "[a]llowing AmeriFirst to litigate a portion of these claims on the Class's behalf does not make the suit a 'nuisance.'" *Id.* at 1372. Additionally, the court found that "an express assignment by one who has standing to sue [does not] introduce the evidentiary problems present in *Blue Chip.*" *Id.*

In *Smith,* the plaintiff was a shareholder of a company that allegedly assigned to him the company's Rule 10b–5 claims. 977 F.2d at 947–48. The court dismissed the plaintiff's case, as it found the action would be used by the plaintiff as a "weapon" for

his "personal antagonisms." *Id.* at 950. The court thus held that the lawsuit was akin to the strike or nuisance suits the Supreme Court discussed in *Blue Chip,* and additionally found that the plaintiff faced "potentially insuperable evidentiary obstacles in proving the merits of his case." *Id.* The court thus held that the plaintiff, as the assignee, was the type of remote purchaser contemplated and discouraged in *Blue Chip.* . *Id.*

Although an express assignment may be allowed in certain circumstances, those circumstances are limited by the concerns set forth in *Blue Chip* and have not been utilized with any frequency in other courts. Thus, there are two issues for this Court to address: (1) whether there was an express assignment of Plaintiffs' securities claims, and (2) if there was such an express assignment, whether the Court can allow such an assignment to stand in light of the concerns in *Blue Chip.*

### 1. Express Assignment

The relevant section of the Transfer Agreement is the "Transferred Rights" definition under Section A, which states as follows:

> "Transferred Rights" means with respect to each Seller's Ownership Interest all of such Seller's right, title and interest in, to and under the all of Securities and, to the extent related thereto: ... (iii) all claims, ... suits, causes of action, and any other right of Seller, whether known or unknown, against the Issuer, MNP, or any of their respective Affiliates, agents, representatives, contractors, advisors, or any other Person that in any way is based upon, arises out of or is related to any of the foregoing, including, *to the extent permitted to be assigned under applicable law,* all claims (including ... claims under any law governing the purchase and sale of, or indentures for, securities), suits,

causes of action, and any other right of Seller against any attorney, accountant, financial advisor, or other Person arising under or in connection with the Financing Documents...."

"Transferred Rights," Section A, Transfer Agreement, Ex. C, ECF No. 55–4 (emphasis added). Plaintiffs bring attention to the clause "to the extent permitted to be assigned under applicable law" and contend that this means Plaintiffs did *not* assign their right to bring the present claims against Defendants. However, the placement of this clause is problematic for Plaintiffs, as it modifies the assignee's rights to bring claims against "any attorney, accountant, financial advisor, or other Person arising under or in connection with the Financing Documents," but it does not appear to modify the assignment of Plaintiffs' right to sue "the Issuer, MNP, or any of their respective Affiliates, agents, representatives, contractors, advisors, or any other Person...." *Id.*

Given the placement and nature of the pertinent language in the Transfer Agreement, the Court cannot discern on this record whether the contested language is "boilerplate" or if it was intentionally drafted because Plaintiffs did not intend to assign their right to bring the claims at issue. However, the plain language of the Transfer Agreement appears to provide an express assignment of those rights. Thus, the inquiry continues.

### 2. Application of *Blue Chip* Dual Concerns

The *Blue Chip* dual concerns must be addressed for an express assignment to provide an *assignee* rather than the assignor with the right to bring a securities claim against the alleged securities law violator. Notably, the cases cited by the parties involved an assignee attempting to bring a securities cause of action based on the transfer of the original purchaser's

rights to such a lawsuit. However, the Supreme Court did not limit its analysis in *Blue Chip* to cases where an assignee is seeking to bring a § 10b claim—rather, the concerns dealt with *any* party bringing such a claim. *Blue Chip*, 421 U.S. at 731–32, 95 S.Ct. 1917. The *Blue Chip* concerns are valid regardless of the party bringing suit—the Supreme Court seeks to ensure a "purchaser or seller" of the securities who experienced the alleged securities violation is the party bringing suit, as the more distant a plaintiff is from the alleged violation, the more likely it is that the *Blue Chip* concerns are realized. *Id.*

■ The record does not indicate whether Sea Port Group has a desire to bring any type of litigation, vexatious or not, and in fact, Sea Port Group sold the securities at issue to another entity with no attempt disclosed in this record to bring any type of suit against Defendants. Thus, the vexatious litigation concern cannot be demonstrated. However, the evidentiary issues created by Sea Port Group or a further assignee attempting to bring a § 10(b) claim are apparent. Sea Port Group was not involved in the Note Offering at issue, so even if Sea Port Group was somehow able to establish Article III standing to sue Defendants, it would then require the involvement of Plaintiffs to prove its case. This is in no way similar to the facts in *Farey–Jones* and *AmeriFirst*, the two cases that allowed an express assignment of a § 10(b) claim to stand. *See Farey–Jones*, 132 F.Supp.2d at 100; *AmeriFirst*, 757 F.Supp. at 1370. Due to the extremely rare nature of allowable express assignments after *Blue Chip*, and based on the great evidentiary concerns with Sea Port Group or its assignee bringing a § 10(b) claim against Defendants in this case, this Court will not recognize the express assignment as having assigned Plaintiffs' right to bring securities claims

against Defendants, as *Blue Chip* renders such an assignment inoperable as a matter of law, and thus not "permitted to be assigned under applicable law." "Transferred Rights," Section A, Transfer Agreement, Ex. C, ECF No. 55–4.

Defendants argued at the hearing in this matter that even if the express assignment did not validly transfer Plaintiffs' right to bring their securities claims, Plaintiffs did not retain the right to bring such claims due to their attempt to transfer those rights to Sea Port Group. This Court does not accept Defendants' argument that cases precluding an assignee from bringing the claim simply allow the claim to vanish and thus preclude the pursuit of the fraud by the initially wronged party. *See Bartemeier v. Central Nat. Fire Ins. Co.*, 180 Iowa 354, 160 N.W. 24, 28 (Iowa 1916) (stating that if an assignment is incomplete, "the assignor's title and right of possession is indisputable"). Defendants cite *Rockhill v. Jeude*, No. 11–1308(BJR), 2012 WL 4882308 (W.D.Wash. Oct. 15, 2012), to support their argument that Plaintiffs lack standing due to their attempt to assign certain rights to Sea Port Group; however, without reference to *Blue Chip* or the central factual concerns at issue here, *Rockhill* only answers the generic question of whether an assignor has standing after its rights have been *successfully assigned* to another entity. *See Rockhill*, 2012 WL 4882308, at *2 (stating the rule that "[i]f Plaintiffs' claims have been assigned, then Plaintiffs have relinquished their right to sue and this Court no longer has jurisdiction over those claims," and finding that Plaintiffs in fact assigned certain rights such that they lacked standing to bring several of their claims against Defendants) (citing *Hsu v. Allianz Life Ins. Co.*, 168 F.3d 499 (9th Cir. Feb. 18, 1999) (unpublished opinion)).

. This Court finds that Plaintiffs' claims herein were not successfully assigned in this case, as such assignment is not allowed after *Blue Chip*, as discussed above; thus, *Rockhill* is inapplicable. Rather, after finding that the express assignment is disallowed due to the application of *Blue Chip* and the Supreme Court's dual concerns regarding persons bringing securities claims, this Court finds that Plaintiffs' rights to bring its securities claims against Defendants remained with Plaintiffs. Plaintiffs therefore have standing to bring this suit.

### B. Personal Jurisdiction

Defendants contend that dismissal of Plaintiffs' Complaint is appropriate because this Court lacks personal jurisdiction over all three individual Defendants. Defendants argue that the Complaint fails to allege that Defendants manifested an intention to be subject to suit in Iowa, as any and all communication regarding the note offering was between Plaintiffs and Dewey—not the Defendants.

Plaintiffs filed suit under 15 U.S.C. §§ 78j(b) and 78t(a) of the Securities and Exchange Act of 1934. The Securities and Exchange Act provides for nationwide service of process. *See* 15 U.S.C. § 78aa ("... process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found."); *see also In re Fed. Fountain, Inc.*, 165 F.3d 600, 602 (8th Cir.1999) ("Congress has in fact quite frequently exercised its authority to furnish federal district courts with the power to exert personal jurisdiction nationwide" (citing 15 U.S.C. § 78aa)).

■ As set forth by the Fifth Circuit, "when a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States." *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir.1994) (citations omitted). "Thus, while the Due Process Clause must be satisfied if a forum is to acquire personal jurisdiction over a defendant, sovereignty defines the scope of the due process test." *Id.*

The parties do not contest that Defendants have sufficient minimum contacts with the United States. Thus, this Court has personal jurisdiction over Defendants for purposes of their federal securities claims.

■ With regard to Plaintiffs' state law claims, it is well-settled outside of the Eighth Circuit that if a federal district court has personal jurisdiction over a defendant due to a federal statute that authorizes nationwide service of process, that court also has discretion to exercise "pendent personal jurisdiction" over the defendant for any state claims that "derive from a common nucleus of operative fact" as the federal claim. *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir.1993).[7] The issue has been analyzed

---

7. *See also Avocent Huntsville Corp. v. Aten. Int'l Co., Ltd.*, 552 F.3d 1324, 1339 (Fed.Cir. 2008) (holding that a federal district court may exercise pendent personal jurisdiction over a party's non-patent claims so long as "they form part of the "same case or controversy" as the patent claims" (citation and quotation marks omitted)); *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir.2004) (holding "that the actual exercise of personal pendent jurisdiction in a particular case is within the discretion of the district court," so long as the state and federal claims arise out of the same nucleus of operative fact and the district court finds that "considerations of judicial economy, convenience and fairness to litigants' so dictate" (citation and quotation marks omit-

recently in Iowa's Northern District in the RICO context in *Armstrong v. American Pallet Leasing, Inc.*, 678 F.Supp.2d 827, 845–848 (N.D.Iowa 2009). Although the Eighth Circuit has not yet decided the specific issue, this Court has previously agreed with the majority of circuits to allow for pendent personal jurisdiction in situations like the one at bar. *See Getter v. R.G. Dickinson & Co.*, 366 F.Supp. 559, 567 (S.D.Iowa 1973) (holding that given the absence of Eighth Circuit law on the issue, and based on reasoning set forth by other courts, "the better rule of law is that pendent personal jurisdiction should be allowed in a case where pendent subject matter jurisdiction is justified").[8] This Court is convinced on the basis of authority from other jurisdictions that it will remain consistent with Judge Hanson's view in *Getter* and will exercise pendent personal jurisdiction over Plaintiffs' state law claims against Defendants.

## C. Settlement Release

Defendants argue that Plaintiffs' rights to bring a securities claim were released in the Dewey bankruptcy case, as the final purchaser of the Notes—LJF Holdings—signed a settlement release wherein LJF Holdings released Dewey from any and all liability on any securities claims. Additionally, the bankruptcy court entered an order enjoining anyone from asserting released claims against Dewey and its insureds. Defendants argue that they are considered "insureds" (an issue not contested on this motion) under Dewey's settlement release, and therefore any and all claims pertaining to the sale of the notes at issue have been released and cannot now be litigated in this Court. Plaintiffs argue that LJF Holdings could not release the securities claims, as those claims belonged to Plaintiffs and were never transferred or assigned to Sea Port Group or later LJF Holdings.

█ As the Court has found that there was never a valid assignment of Plaintiffs' securities claims in the transfer of the Notes to Sea Port Group, it necessarily follows that LJF Holdings could not have released claims it did not have. The Settlement Release is therefore inapplicable to the matters before this Court and does not prevent Plaintiffs from bringing their securities claims against Defendants.

ted)); *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir.2002) (holding that "the majority of federal district courts and every circuit court of appeals to address the question have upheld the application of pendent personal jurisdiction, and we see no reason why, in certain situations, the assertion of pendent personal jurisdiction would be inappropriate"); *Robinson Eng'g Co. Pension Plan & Trust v. George*, 223 F.3d 445, 449 (7th Cir.2000) (holding that it was proper for the federal district court to find that it had personal jurisdiction over the RICO claims in the case when those state claims arose out of the same nucleus of operative fact as the federal securities claims under a theory of pendent personal jurisdiction); *Oetiker v. Jurid Werke*, 556 F.2d 1, 4 (D.C.Cir.1977) (holding that the plaintiff was able to exercise personal jurisdiction over the defendant for the plaintiff's claims that arose out of a common core of operative facts as the claims that fell within the plaintiff's claims that allowed for national service of process); *Robinson v. Penn Cent. Co.*, 484 F.2d 553, 556 (3d Cir.1973) ("In this case, recognizing that Cabot was properly before it by virtue of extraterritorial service authorized by two federal statutes, the district court properly weighed considerations of judicial economy, convenience and fairness, and concluded that it would entertain the pendent claims. That course was within its power and the district court will also have power to dismiss the pendent claims in the future as noted above.").

8. *See also WhatRU Holding, LLC v. Bouncing Angels, Inc.*, Civil No. 13–2745 (JNE/TNL), 2014 WL 641517, *4 (D.Minn. Feb. 19, 2014) (slip op.); *Gatz v. Ponsoldt*, 271 F.Supp.2d 1143, 1154 (D.Neb.2003); *Rose*, 562 F.Supp. at 1213.

## D. Failure to State a Claim Under Section 10(b)

Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), states as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ... to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5 states as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

Plaintiffs must, in their Complaint, allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Minneapolis Firefighters' Relief Assoc. v. MEMC Elec. Materials, Inc.,* 641 F.3d 1023, 1028 (8th Cir.2011) (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atl., Inc.,* 552 U.S. 148, 157, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008)).

"The [Private Securities Litigation Reform Act] PSLRA imposes a heightened pleading standard in cases alleging securities fraud." *Lustgraaf v. Behrens,* 619 F.3d 867, 873 (8th Cir.2010). "The heightened standard requires a plaintiff to 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading[.]'" *Pub. Pension Fund Grp. v. KV Pharm. Co.,* 679 F.3d 972, 980 (8th Cir.2012) (quoting 15 U.S.C. § 78u–4(b)(1)) (alterations in original). "The circumstances of the fraud must be stated with particularity, including such matters as the time, place and contents of false representations, ... [t]his means the who, what, when, where, and how." *Id.* (citation and quotation marks omitted) (alterations in original). "The PSLRA also requires a plaintiff to plead sufficient particular facts establishing scienter." *Id.* (citing 15 U.S.C. § 78u–4(b)(2)(A)).

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). "The particularity requirement [of Rule 9(b)] entails the pleading of 'the who, what, when, where and how: the first paragraph of any newspaper story.'" *Martino–Catt v. E.I. duPont de Nemours & Co.,* 213 F.R.D. 308, 314 (S.D.Iowa 2003) (quoting *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 549

(8th Cir.1997)) (alteration in original). "However, for claims brought under Rule 10b–5 and Section 10(b), the PSLRA 'supersedes reliance on FRCP 9(b) ... and embodies [its] standards.' " *Id.* (quoting *In re Navarre Corp.*, 299 F.3d 735, 742 (8th Cir.2002)) (alterations in original).

"To satisfy the requirements of the PSLRA, the complaint must first specify each misleading false statement or misleading omission and explain why it is misleading." *Id.* (citing 15 U.S.C. § 78u–4(b)(1) (Supp. IV 1998)). Plaintiffs must plead facts that "provide adequate basis for believing the statements were false." *Id.* (citation and quotation marks omitted). "The Complaint must also state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind. Knowledge of recklessness, but not negligence, is sufficient to satisfy the 10b–5 scienter requirement." *Id.* (internal citations omitted).

█ The group pleading doctrine (GPD) is an "exception [to the pleading requirement] premised on the assumption that in cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other group-published information, it is reasonable to presume that these are the collective actions of the officers." *In re Hutchinson Tech., Inc. Sec. Litig.*, 536 F.3d 952, 961 n. 6 (8th Cir.2008) (quoting *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 689 (6th Cir.2005)) (internal quotation marks omitted); *see also In re Meta Fin. Grp., Inc.*, No. C 10–4108–MWB, 2011 WL 2893625, at *8 (N.D.Iowa July 18, 2011); *In re McLeodUSA Inc. Sec. Litig.*, No. C02–001–MWB, 2004 WL 1070570, at *4 (N.D.Iowa Mar. 31, 2004).

Defendants argue that Plaintiffs have failed to sufficiently allege that any of the named Defendants made any specific misstatements, misrepresentations, or material omissions for purposes of their claim under § 10(b), and that the GPD did not survive passage of the PSLRA or the decision in *Janus Capital Group, Inc. v. First Derivative Traders*, —— U.S. ——, 131 S.Ct. 2296, 2302, 180 L.Ed.2d 166 (2011).

This Court, following the passage of the PSLRA, held that the GPD survived the PSLRA in cases where "the identification of individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group published documents." *Martino–Catt*, 213 F.R.D. at 315 (noting that "[c]ourts confronting the question have held that the PSLRA has not abolished the group pleading doctrine") (citation and quotation marks omitted). The Court in *Martino–Catt* therefore found the allegation that defendants had jointly made communications set forth in "group published documents" sufficient to put the defendants on notice that they were accused of having made the allegedly fraudulent statements. *Id.* ("Under the group pleading doctrine, the identification of individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group published documents." (citation and quotation marks omitted)).

The Northern District of Iowa has also found that the GPD survived the PSLRA. *See In re Meta Fin. Grp.*, 2011 WL 2893625, at *8 (finding that the GPD "does adequately tie the alleged misrepresentations and non-disclosures to the various defendants"); *In re McLeodUSA*, 2004 WL 1070570, at *4 (stating that "under the group-published information doctrine, plaintiffs may impute false or misleading statements conveyed in annual reports, quarterly and year-end financial results, or other group-published information to corporate officers," so long as those officers are "clearly cognizable corporate insiders

with active daily roles in the relevant companies or transactions" (citation and quotation marks omitted)); *see also In re Raytheon Sec. Litig.*, 157 F.Supp.2d 131, 152–53 (D.Mass.2001) (collecting federal cases and concluding that the GPD survives the PSLRA). This Court concurs that the GPD survived the passage of the PSLRA; however, the doctrine must also survive the Supreme Court's 2011 decision in *Janus* to remain viable.

In *Janus*, the Supreme Court stated that for purposes of § 10(b),

> [T]he maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker. And in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by— the party to whom it is attributed. This rule might best be exemplified by the relationship between a speechwriter and a speaker. Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it. And it is the speaker who takes credit—or blame—for what is ultimately said.

*Janus*, 131 S.Ct. at 2302. The Supreme Court reiterated that "the maker of a statement is the entity with authority over the content of the statement and whether and how to communicate it. Without such authority, it is not 'necessary or inevitable' that any falsehood will be contained in the statement." *Id.* at 2303. Further, the Supreme Court stated that its "holding also accords with the narrow scope that we must give the implied private right of action," thus refusing to "expand liability beyond the person or entity that ultimately has authority over a false statement." *Id.*

■ The parties agree that the Court can take judicial notice of the Indictment and SEC Complaint, which set forth statements regarding the Defendants' authority to make decisions on behalf of and in the name of the law firm. The Court will therefore not require Plaintiffs to amend their pleading with this additional information for purposes of the current motion. These documents contain allegations about each of the individual Defendants in this case and provide specific statements made by each individual that tie them to a conspiracy to commit a fraudulent act. There are also allegations regarding each individual Defendant's involvement in attempts to obtain capital from outside entities—including Plaintiffs. Based on the record before this Court, Plaintiffs' claims survive even the heightened pleading standards set forth in Rule 9 and the PSLRA.[9]

**E. Failure to State a Claim Under Section 20(a)**

Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a), states as follows:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable ... unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

9. The Court intentionally does not reference specific allegations from the Indictment nor the SEC Complaint, leaving those judgments to counsel as the case proceeds.

To state a claim under § 78t(a), Plaintiffs must show "(1) that a primary violator violated the federal securities laws; (2) that the alleged control person actually exercised control over the general operations of the primary violator; and (3) that the alleged control person possessed—but did not necessarily exercise—the power to determine the specific acts or omissions upon which the underlying violation is predicated." *Lustgraaf,* 619 F.3d at 873 (citation and quotation omitted). The first element of the test is analyzed under the heightened pleading standards of Rule 9(b) and the PSLRA; the other two elements are analyzed under normal 12(b)(6) standards. *Id.* at 875, 877 ("Because federal control-person liability is dependent on control, not fraud, the heightened pleading standards instituted by the PSLRA" are not applicable to the "culpable participation" concern in other fraud cases.). Plaintiffs must therefore "allege facts demonstrating that the alleged control person actually exercised control over the primary violator's *general* operations in order to state a claim for control-person liability." *Id.* at 878 (citation and quotation marks omitted). The Complaint sufficiently alleges that Defendants each exercised control over Dewey's general operations in their capacities as officers of the firm. However, the wrinkle in this case is whether Dewey must be sued by Plaintiffs as a primary violator for Plaintiffs' control-person suit under § 20(a) for Plaintiffs' claim to survive.

Defendants argue that Plaintiffs' control-person claim fails because Plaintiffs are unable to establish that Dewey—the allegedly controlled person/entity—is liable to Plaintiffs. Dewey is not a party to this litigation, and in fact it is now a bankrupt and dissolved law firm; thus, Defendants contend it is impossible for Plaintiffs to establish Dewey's liability. Plaintiffs counter with prior authority from this Court—that the primary violator's liability is merely an element they must prove in their control-person claim.

Years ago this Court confronted this issue in *Briggs v. Sterner,* 529 F.Supp. 1155, 1171 (S.D.Iowa 1981), and held that "[i]n keeping with the broad remedial purpose of the securities laws, whether state or federal, the Court will not permit officers and directors of a bankrupt corporation whose actions are alleged to have contributed to that condition to avoid the possible imposition of liability under such laws by asserting the lack of a prior adjudication against the controlled person as a basis for dismissal." The Court further held that "[t]he primary liability of the controlled person is merely a required element of proof before a controlling person can be held vicariously liable." *Id. Briggs* is still sound law, and the policy behind Judge Stuart's reasoning in that case is likewise sound in preventing corporate control persons from eluding liability simply because their controlled entity is bankrupt or defunct.

This Court also finds the controlled entity is an element of the claim rather than a required party to the action, and that Plaintiffs have sufficiently plead their § 20(a) claim.

## F. State Law Claims

Plaintiffs bring their primary liability state securities claim under Iowa Code § 502.509(2) of the Iowa Securities Act,[10] which states as follows:

---

**10.** The parties conceded at the hearing that the Court need not be concerned with the choice of law provision in the Note Purchase Agreement, as the claims at issue operate apart from construction or enforcement of the underlying agreement.

A person is liable to the purchaser if the person sells a security in violation of section 502.301 or, by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which it is made, not misleading, the purchaser not knowing the untruth or omission and the seller not sustaining the burden of proof that the seller did not know and, in the exercise of reasonable care, could not have known of the untruth or omission.

Plaintiffs bring their secondary liability state claim for "control persons" under Iowa Code § 502.509(7), which provides for joint and several liability for specified types of individuals who control a primarily liable person, including persons who are a "managing partner, executive officer, or director," "[a]n individual who is an employee of or associated with a [primary violator]," or a "broker-dealer, agent, investment advisor, or investment advisor representative that materially aids the conduct giving rise to the [primary liability]." Iowa Code § 502.509(7).

Defendants contend that Plaintiffs' state law claims are subject to the Rule 9(b) pleading standard, and that Plaintiffs' Complaint fails to meet this standard. Plaintiffs note that Defendants have failed to identify any pleading defect as to Plaintiffs' state law claims, and Plaintiffs contend this is because there is no such defect.

Defendants make a general assertion that Plaintiffs fail to adequately plead their state securities claims without identifying any actual flaws in Plaintiffs' Complaint. Additionally, the parties agree that the Court can take judicial notice of the Indictment and SEC Complaint, which contain information that Plaintiffs would assuredly add to their pleading if they had the opportunity to amend their Complaint. The Court therefore views Plaintiffs' Complaint in conjunction with the statements provided in the Indictment and SEC Complaint in determining whether Plaintiffs' claims survive scrutiny for purposes of Defendants' motion under Rule 12(b)(6). Based on the entire record, this Court finds that Plaintiffs have satisfied the requisite pleading standard for their state securities claims.

## III. CONCLUSION

For the reasons stated, Defendants' Motions to Dismiss, ECF Nos. 55 and 56, must be **denied.**

**IT IS SO ORDERED.**