# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

McMillan Pazdan Smith, LLC, Plaintiff/Counter-Defendant, Respondent,

v.

Donza H. Mattison, Defendant/Counterclaimaint, Appellant.

AND

Donza H. Mattison, in a Derivative Capacity on Behalf of McMillan Pazdan Smith, LLC, Third-Party Plaintiff, Appellant,

v.

Ronald G. Smith, Estate of Joseph M. Pazdan, Brad B. Smith, and Chad C. Cousins, Third-Party Defendants, Respondents.

Appellate Case No. 2020-001645

———————

Appeal From Greenville County
R. Lawton McIntosh, Circuit Court Judge

———————

Opinion No. 6079
Heard December 6, 2023 – Filed August 7, 2024

———————

**AFFIRMED**

———————

David Eliot Rothstein, of Rothstein Law Firm, P.A., of Greenville, for Appellant.

Thomas H. Keim, Jr., of Ford & Harrison, LLP, of Spartanburg; Allen Mattison Bogan, of Nelson Mullins Riley & Scarborough, LLP, of Columbia; and Miles Edward Coleman and Samuel W. Outten, both of Nelson Mullins Riley & Scarborough, LLP, of Greenville, all for Respondents.

---

**VINSON, J.:**  Donza H. Mattison, on behalf of McMillan Pazdan Smith, LLC (MPS), appeals the circuit court's grant of summary judgment dismissing her derivative action against Ronald G. Smith, the Estate of Joseph M. Pazdan, Brad B. Smith, and Chad C. Cousins (collectively, Majority Members).  Mattison argues the circuit court erred by (1) assigning her the burden of proof and disregarding many of the applicable factors when determining whether she was a fair and adequate representative for the derivative action; (2) accepting unsworn, boilerplate statements for affidavits; (3) ascribing her with an improper motive for filing the derivative action; (4) considering confidential settlement negotiations that were inadmissible under Rule 408, SCRE; (5) failing to view the facts in the light most favorable to her as required on Majority Members' motion for summary judgment; (6) refusing to consider her "class of one" argument; (7) limiting the scope of discovery; and (8) refusing to address the conflict of interest that arose due to the same law firm representing MPS, Majority Members, and the minority members of MPS.  We affirm.

**FACTS AND PROCEDURAL HISTORY**

MPS is an architecture firm with offices in South Carolina, North Carolina, and Georgia.  Mattison is a former employee and current minority shareholder of MPS who worked as an architect in its Spartanburg office.  Mattison began working for MPS's predecessor, McMillan Smith & Partners Architects, PLLC (McMillan Smith & Partners), in September 1994 and became a partner at the firm two years later.  McMillan Smith & Partners merged with Pazdan-Smith Group to form MPS in 2009.

Following the merger, MPS members signed an operating agreement dated September 25, 2009.  The 2009 operating agreement stated any amendment to the agreement that affected the financial or voting rights of the members required approval of all MPS members.  On November 30, 2015, members of MPS adopted an amended and restated operating agreement, which Mattison refused to consent

to or sign.  Mattison refused to sign the 2015 operating agreement primarily because it reduced the "required interests of members," the supermajority of the firm's membership needed to approve certain company matters, from 75% to 66.67%.

Beginning on November 20, 2017, Mattison went on medical leave from MPS. Mattison and MPS entered into a severance agreement, which addressed Mattison's dissociation from MPS.  The severance agreement provided that nothing in the agreement would have any effect on Mattison's rights and remedies relating to her dissociation from MPS or her ownership rights or interests upon dissociation.

In January 2018, Mattison was diagnosed with breast cancer.  She voluntarily resigned from MPS in February 2018.  On August 3, 2018, Mattison notified MPS her cancer treatments had finished and she was prepared to continue finalizing the terms of the buy-out of her membership interests.  The same day, MPS conveyed an offer to purchase Mattison's 2,035.34 ownership units for $267,647.21, a price based on a valuation prepared by HDH Advisors LLC (HDH), a third-party appraiser MPS had retained to provide an annual business appraisal of the firm. On January 14, 2019, Mattison sent a letter to MPS disputing HDH's valuation and demanding a higher per-unit price.  Mattison claimed HDH failed to account for "the managing members' excessive compensation, perks and benefits, as well as above-market lease payments to related parties . . . for the Spartanburg office" when determining the fair market value of her units.  Mattison demanded payment of $829,000 for her ownership interest in MPS and stated she intended to file an action for judicial valuation of her shares and a shareholder derivative action if the matter was not resolved before February 1, 2019.

On February 20, 2019, the parties engaged in mediation in an effort to resolve the dispute but were unable to reach an agreement.  MPS filed their declaratory judgment action against Mattison on February 22, 2019.  The complaint requested that the circuit court find that (1) the severance agreement was a valid and enforceable contract, (2) Mattison's units were to be valued in accordance with the terms of the 2015 operating agreement, (3) MPS followed the 2015 operating agreement's provisions regarding the annual valuation of the company, (4) the value of Mattison's units should be determined by applying the per unit price from the 2017 valuation conducted by HDH, and (5) Mattison did not have the right to contest HDH's 2017 valuation of MPS.  Mattison filed an answer, counterclaims, and this derivative action against Majority Members.

Mattison's derivative action included causes of action for breach of fiduciary duty and breach of an operating agreement against Majority Members on behalf of

MPS. She alleged Majority Members had overpaid themselves through "excessive compensation, bonuses, perquisites, and fringe benefits" for themselves and their families. Mattison also alleged Majority Members Ron Smith, Brad Smith, and Joseph Pazdan approved the lease transaction of MPS's Spartanburg office, which is owned by Ron Smith's wife, for years even though the rental rate exceeded the fair market value of similar office space. Her third-party complaint stated she had sent the January 14, 2019 letter suggesting the firm should take action against its Managing Members for breach of fiduciary duty.

On April 1, 2019, Majority Members filed a motion to dismiss, arguing that Mattison's third-party complaint did not meet the pleading requirements of Rule 23(b)(1), SCRCP, which pertains to derivative actions by shareholders, because she failed to make a pre-suit demand. Majority Members also argued that Mattison did not fairly and adequately represent the interest of MPS's other similarly situated members.

Mattison filed a motion to disqualify Respondent's counsel, arguing that having the same counsel represent both MPS and the Majority Members simultaneously created a conflict of interest. Mattison later agreed to withdraw the motion without prejudice pending the circuit court's ruling on Majority Members' motion to dismiss.

After a hearing on the motion, the circuit court issued an order dismissing the derivative action without prejudice and allowing Mattison thirty days to amend her pre-suit demand and derivative action claims pursuant to *Skydive Myrtle Beach, Inc v. Horry County*.[1] The circuit court held Respondent's argument regarding Mattison's ability to represent the other minority members in abeyance pending further discovery.

On June 18, 2019, Mattison sent a second letter to MPS stating she believed the Majority Members were excessively compensated and giving notice MPS should take legal action against Majority Members and that she would pursue a derivative action if the issues she raised were not addressed. Mattison then filed an amended answer, counterclaims, and third-party complaint. The amended third-party complaint included claims of breach of fiduciary duty and breach of the operating

---

[1] 426 S.C. 175, 189, 826 S.E.2d 585, 592 (2019) ("Under Rules 12(b)(6) and 15(a), the circuit court may not dismiss a claim with prejudice unless the plaintiff is given a meaningful chance to amend the complaint, and after considering the amended pleading, the court is certain there is no set of facts upon which relief can be granted.").

agreement against Majority Members. Majority Members filed a second motion to dismiss, again arguing Mattison's third-party complaint did not meet the requirements of Rule 23(b)(1), SCRCP, and that Mattison did not adequately represent the interests of MPS's other members. Majority Members contended the June 18, 2019 letter could not be considered a valid pre-suit demand because litigation was already underway. The circuit court held a hearing on Majority Members' second motion to dismiss on September 10, 2019, and afterwards issued an order denying the motion, finding that Mattison's June 18, 2019 letter was a valid pre-suit demand and that she had properly pled the derivative action claims in her amended third-party complaint. The circuit court again held the issue of whether Mattison fairly and adequately represented the interests of other members of MPS in abeyance pending further discovery.

Majority Members filed a motion for a protective order and to quash non-party subpoenas. Mattison filed a renewed motion for disqualification of Majority Members' counsel, again arguing that counsel should not represent MPS and Majority Members simultaneously. At a hearing held on Majority Members' motion for a protective order, the circuit court sua sponte issued a ruling limiting discovery to two issues: the valuation of Mattison's ownership interest and whether she was a fair and adequate representative for the derivative action. The circuit court later issued an order granting the Majority Members' motion for a protective order and to quash the non-party subpoenas. The order included its ruling limiting discovery.

Majority Members' counsel notified Mattison that they had obtained statements from every other member of MPS refusing to support the derivative action. The members' statements indicated that the members reviewed and considered Mattison's allegations in the derivative action and declined to support the action in any way. Majority Members requested that Mattison dismiss her derivative action in light of the member statements. Mattison declined to withdraw the derivative action and served notice of depositions to six of the minority members who signed the statements against the derivative action. Majority Members filed a motion for a protective order from the deposition notices, arguing Mattison's "sole purpose in noticing the depositions was to subject the members of MPS to annoyance, embarrassment, oppression, and undue burden and expense."

Before the hearing on the motion for protection, the circuit court requested a conference call with both parties. During the conference call, the circuit court denied Majority Members' motion for protection, allowing the depositions of the six minority members of MPS to proceed. The circuit court limited the depositions to the topics of the valuation of Mattison's membership shares and her ability to

serve as a fair and adequate representative of MPS in the derivative action. The circuit court also held Mattison's motion for disqualification of Majority Members' counsel in abeyance until it determined whether Mattison was a fair and adequate representative for the derivative action.[2]

The depositions of William Joslin, Keith Allen Jacobs, II, and Paulette Myers were taken in January and February 2020. During the depositions, the minority members adopted and affirmed under oath the member statements in which they declined to participate in the derivative action. The minority members also stated they had no concerns or issues with Majority Members' compensation after Mattison presented them with information regarding those allegations.

Following the depositions, Majority Members filed a motion for summary judgment as to Mattison's derivative action, arguing that Mattison did not fairly and adequately represent the other members of MPS because the "undisputed evidence show[ed] that the other members of MPS oppose this derivative action and the allegations made by Mattison." Majority Members contended Mattison sought relief contrary to the interests of the other members of MPS and that she brought the derivative action to gain leverage in the dispute regarding the value of her membership units.

Mattison opposed the motion, arguing she could fairly and adequately represent the interests of the other member of MPS. She contended she did not bring the derivative action to gain leverage in the dispute concerning the value of her membership units and that she could pursue a derivative action without the support of the other members of MPS as a "class of one," being the only shareholder not currently employed by the firm.

At the hearing held on the motion for summary judgment, the following discussion occurred:

> THE COURT: [A]side from the numbers, the clear
> uncontested issue between the parties in your
> correspondence to Sam is that, "We reject this offer that
> you have given us. And if you don't settle with us, we're
> going to file this derivative action." It's clearly, based on

---

[2] The circuit court did not issue an order regarding the issues it ruled on during the conference call, and no record of the rulings exists outside Mattison's counsel's letter summarizing the rulings and the circuit court's email confirming the letter correctly stated the rulings.

> your own language, a leverage being used in this case, and I don't see how any time you can get around it . . . .
>
> [MATTISON]: Well, Your Honor, I mean, there was nothing improper in her doing that.

When the circuit court inquired how Mattison could adequately represent the minority shareholders still employed with MPS who did not support the derivative action when she had an underlying claim to increase the valuation of her membership units, Mattison's counsel stated "the question is, can she represent similarly situated shareholders?"  The circuit court replied "I don't buy that argument, but you can try it.  And I thought it was very clever, but I don't buy the fact that she's the only one similarly situated being the nonemployee shareholder.  I don't buy that."

Later in the hearing, the circuit court stated "[T]he real issue behind this derivative case, in my view, is that she's trying to seek a higher payout," to which Mattison's counsel responded "No question about that, Your Honor, but there's nothing wrong with that."  When the circuit court stated "your ultimate goal is to increase what her buyout is" Mattison's counsel again agreed.  Mattison's counsel also stated "the idea that we're trying to maximize the value of her claim, that's absolutely what we're trying to do."  Mattison's counsel continued "[a]nd that's what my fiduciary duty to her is to try and maximize that claim, but I'm not using it as a strike suit or a retaliatory thing."

When discussing the derivative actions during the hearing, the circuit court stated: "The burden of proof is different.  It's on the defendant as opposed to the plaintiff.  I got that."  Additionally, when Mattison's counsel stated Majority Members had the burden of proof, the circuit court replied "I think [they have] met that burden of proof quite frankly."  After the hearing, the circuit court issued an order holding the motion for summary judgment in abeyance pending depositions of three more minority members of MPS.

Mattison filed an affidavit summarizing her history with MPS and the alleged overcompensation of Majority Members that led her to file the derivative action.  She stated she understood her fiduciary duty to the similarly situated minority members in bringing the derivative action.

Donald Love, Jr., Richard Cullen Pitts, and Harry D. Ballard were deposed, and they all affirmed their prior written statements declining to participate in the derivative action.  During the deposition they also reviewed the information

provided by Mattison and stated they had no concerns about Majority Members' compensation. Majority Members filed a memorandum in support of their still pending motion for summary judgment, while Mattison filed a memorandum in opposition to summary judgment.

The circuit court issued a Form 4 order granting summary judgment for Majority Members on the derivative action and directing Majority Members to prepare a proposed order to that effect. Later the circuit court issued its formal order granting summary judgment for Majority Members, finding Mattison was not a fair and adequate representative of the other members of MPS because the other members of MPS opposed her derivative action, she brought the derivative action to gain leverage in the dispute regarding the valuation of her membership units, and she sought relief contrary to the interests of the other members of MPS. Mattison filed a motion to reconsider, which the circuit court denied. This appeal followed.

**ISSUES ON APPEAL**

1. Did the circuit court mistakenly assign to Mattison the burden of proof, and disregard the applicable factors on the issue of whether she could fairly and adequately represent the interests of similarly situated members of MPS in a derivative action?

2. Did the circuit court err by accepting unsworn, boilerplate statements from MPS's witnesses when these statements failed to comply with Rule 56(e), SCRCP?

3. Did the circuit court incorrectly ascribe to Mattison an improper motive in filing her derivative action?

4. Did the circuit court err in considering and relying on confidential settlement communications that were inadmissible under Rule 408, SCRE?

5. Did the circuit court fail to view the facts and inferences in the record in the light most favorable to Mattison, by disregarding statements made in Mattison's verified pleadings and supplemental affidavit?

6. Did the circuit court err in refusing to consider the "class of one" argument in Mattison's derivative action?

7. Did the circuit court improperly limit the scope of discovery where the minority members' knowledge about the underlying facts of the derivative action was crucial to Mattison's allegations?

8. Did the circuit court err in refusing to address the intractable conflict of interest that exists in the same law firms' representing MPS, Majority Members, and the minority members of MPS simultaneously?

## STANDARD OF REVIEW

"When reviewing the grant of a summary judgment motion, [an appellate] court applies the same standard that governs the trial court under Rule 56(c), SCRCP; summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *S. Glass & Plastics Co. v. Kemper*, 399 S.C. 483, 490, 732 S.E.2d 205, 208-09 (Ct. App. 2012). "Once the moving party carries its initial burden, the opposing party must come forward with specific facts that show there is a genuine issue of fact remaining for trial." *Id.* at 490, 732 S.E.2d at 209 (quoting *Sides v. Greenville Hosp. Sys.*, 362 S.C. 250, 255, 607 S.E.2d 362, 364 (Ct. App. 2004)).

"A trial court judge's rulings on discovery matters will not be disturbed on appeal absent a clear abuse of discretion." *Dunn v. Dunn*, 298 S.C. 499, 502, 381 S.E.2d 734, 735 (1989).

## ANALYSIS

### I.  Fair and Adequate Representation

Mattison argues the circuit court erred in finding she could not fairly and adequately represent the minority members of MPS in a derivative action. She contends the circuit court incorrectly assigned her the burden of proof when determining whether she could represent the other members of MPS. Mattison also asserts the circuit court disregarded many of the factors adopted by *Davis v. Comed, Inc.*[3] when determining that she was not a proper representative of MPS. Mattison further avers she was a legitimate "class of one" and that the circuit court erred in finding she filed her derivative action to gain leverage in her dispute regarding the valuation of her membership units. We disagree.

---

[3] 619 F.2d 588 (6th Cir. 1980) (listing factors courts have examined in determining whether a plaintiff can provide the requisite fair and adequate representation in a derivative action).

Rule 23(b)(1), SCRCP, states "a derivative action brought by one or more shareholders or members to enforce a right of a corporation . . . . may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association."

In examining, Fed. R. Civ. P. 23.1, the federal equivalent of Rule 23(b)(1), SCRCP, the United States Court of Appeals for the Sixth Circuit set forth the following factors for evaluating whether a derivative plaintiff met the representation requirements under the federal rule:

> [(1)] economic antagonisms between representative and class; [(2)] the remedy sought by plaintiff in the derivative action; [(3)] indications that the named plaintiff was not the driving force behind the litigation; [(4)] plaintiff's unfamiliarity with the litigation; [(5)] other litigation pending between the plaintiff and defendants; [(6)] the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; [(7)] plaintiff's vindictiveness toward the defendants; and, finally, [(8)] the degree of support plaintiff was receiving from the shareholders he purported to represent.

*Davis*, 619 F.2d at 593-94.[4]

---

[4] Many jurisdictions have applied these same factors when considering this issue. *See, e.g.*, *Larson v. Dumke*, 900 F.2d 1363, 1367 (9th Cir. 1990); *Vanderbilt v. Geo–Energy, Ltd.*, 725 F.2d 204, 207 (3d Cir. 1983); *Elgin v. Alfa Corp.*, 598 So. 2d 807, 818-19 (Ala. 1992); *Fink v. Golenbock*, 680 A.2d 1243, 1256 (Conn. 1996); *Jennings v. Kay Jennings Family Ltd. P'ship*, 659 S.E.2d 283, 288 (Va. 2008); *Woods v. Wells Fargo Bank*, 90 P.3d 724, 735-36 (Wyo. 2004). Additionally, this court considered these factors when determining whether the appellant was a fair and adequate representative to bring a derivative action in *Boathouse at Breach Inlet, LLC by & through Stoney v. Stoney*, 442 S.C. 633, 900 S.E.2d 483 (Ct. App. 2024), reh'g denied, Apr. 29, 2024, petition for cert. filed, May 29, 2024.

> Typically, the elements are intertwined or interrelated, and it is frequently a combination of factors which leads a court to conclude that the plaintiff does not fulfill the requirements of 23.1 (although often a strong showing of one way in which the plaintiff's interests are actually inimical to those he is supposed to represent fairly and adequately, will suffice in reaching such a conclusion).

*Id.* at 593. Courts have stated these factors are not exclusive and need to be considered in the totality of the circumstances of each case. *Jennings*, 659 S.E.2d at 288.

> A plaintiff in a shareholder derivative action owes the corporation his undivided loyalty. The plaintiff must not have ulterior motives and must not be pursuing an external personal agenda. Whether or not such a personal agenda exists is determined by the trial court, and we will not reverse its determination absent clear error. In deciding this question, the court may properly consider the amount of the plaintiff's stake in the corporation as balanced against his interest and how the litigation may affect his external interests.

*Smith v. Ayres*, 977 F.2d 946, 949 (5th Cir. 1992). "A number of courts have held that plaintiffs who had large personal suits against the company which they purported to represent were not adequate representatives because of the likelihood that they would use the derivative suit as leverage in settling the personal suit." *Palmer v. U.S. Sav. Bank of Am.*, 553 A.2d 781, 786 (N.H. 1989). "While a plaintiff is not necessarily disabled to bring suit simply because some of his interests extend beyond that of the class, the court may take into account outside entanglements that render it likely that the representative may disregard the interests of the other class members." *Blum v. Morgan Guar. Tr. Co. of N.Y.*, 539 F.2d 1388, 1390 (5th Cir. 1976). "[T]he trial court should beware allowing a derivative suit to proceed where the 'representative could conceivably use the derivative action as "leverage" in other litigation . . . .'" *Smith*, 977 F.2d at 949 (second alteration in original) (quoting *Blum*, 539 F.2d at 1390).

This court has held "that under the appropriate circumstances, a single member of a limited liability company may 'fairly and adequately represent the interests of' a class of one and have standing to maintain a derivative action." *Boathouse at Breach Inlet, LLC*, 442 S.C. at 647, 900 S.E.2d at 490 (Ct. App. 2024). The Utah

Supreme Court recognized a "class of one" could have derivative standing, explaining,

> In light of the greater vulnerability to malfeasance that is present in closely held corporations, we hold that a sole dissenting shareholder in a closely held corporation qualifies as a class of one for purposes of derivative standing when that shareholder (1) seeks by its pleading to enforce a right of the corporation and (2) does not appear to be similarly situated to any other shareholder. Further, we hold that shareholders' motivation for opposing the derivative action is relevant to determining the question of whether any shareholder is similarly situated to the derivative plaintiff. To conclude otherwise would be to permit corporate looting and malfeasance in circumstances where all but one shareholder benefit personally from the illegality or are at risk of personal detriment were the malfeasance brought to light.

*Angel Invs. LLC v. Garrity*, 216 P.3d 944, 951 (Utah 2009).

"The true measure of adequacy of representation under Rule 23.1 is not how many shareholders the plaintiff represents but rather how well the representative plaintiff advances the interests of similarly situated shareholders." *Halsted Video, Inc. v. Guttillo*, 115 F.R.D. 177, 179 (N.D. Ill. 1987). However, "[a] plaintiff in a shareholder derivative action owes the corporation his undivided loyalty" and " "must not have ulterior motives and must not be pursuing an external personal agenda." *Smith*, 977 F.2d at 949. Courts have also stated "[o]nly in the rarest instances may there be a shareholder derivative action with a class of one." *Id.* at 948. "In many cases that have permitted single shareholder derivative claims, courts have rested their holding, in part, upon the observation that there was no hint of any conflict between the individual's interests and the interests of the corporation." *ShoreGood Water Co. v. U.S. Bottling Co.*, No. CIV.A.RDB 08-2470, 2009 WL 2461689, at *6 (D. Md. Aug. 10, 2009).

Initially, we hold the circuit court applied the correct standard of proof when deciding to grant summary judgment to Majority Members. *See Halsted Video, Inc.*, 115 F.R.D. at 179 ("The burden is on the defendants to show that the plaintiff will not fairly and adequately represent the corporation and its shareholders."). The circuit court stated several times that the burden was on Majority Members to

prove Mattison was not an adequate representative.  The order granting Respondent's motion for summary judgment shows that the circuit court considered the evidence presented by Majority Members and determined they met the required burden of proof in demonstrating Mattison did not fairly and adequately represent the interests of other members of MPS.  Next, we find the record indicates the circuit court considered the *Davis* factors when determining Mattison was not a fair and adequate representative.  In its order granting summary judgment, the circuit court listed the *Davis* factors and stated that "[c]onsidering these factors . . . the [c]ourt finds that Mattison does not fairly and adequately represent the interests of the other members of MPS."  The circuit court then provided further analysis of the *Davis* factors that supported its grant of summary judgment, including the opposition of all other members to the derivative action and its finding that Mattison was using the derivative suit to gain leverage in the dispute over the valuation of her membership units.  The circuit court further found the relief Mattison sought was contrary to the interests of the other members of MPS.

We hold the circuit court did not err in granting summary judgment for Majority Members because the only reasonable inference to be drawn from the evidence was that Mattison could not fairly and adequately represent MPS in a derivative action as a "class of one."  *See Boathouse at Breach Inlet, LLC*, 442 S.C. at 647, 900 S.E.2d at 490 (holding "that under the appropriate circumstances, a single member of a limited liability company may 'fairly and adequately represent the interests of' a class of one and have standing to maintain a derivative action"); *Angel Invs. LLC*, 216 P.3d at 951 (holding "a sole dissenting shareholder in a closely held corporation qualifies as a class of one for purposes of derivative standing when that shareholder (1) seeks by its pleading to enforce a right of the corporation and (2) does not appear to be similarly situated to any other shareholder.").  We find Mattison was not similarly situated to any other members of MPS because she is the only shareholder not still employed with MPS.  However, her personal interest in increasing the value of her membership units and the conflict between her interests and the interests of MPS bar her from acting as a representative in a derivative action.  No other members participated in this derivative action, and the other members who were deposed stated they did not believe the derivative action was necessary even after Mattison presented them with information regarding her allegations.  Additionally, Mattison requested a finding that amendments to MPS's operating agreement without unanimous consent were null and void, which would result in the divestment of two members of their ownership interest when she was the only member who opposed the amendments.  *See Davis*, 619 F.2d at 594 (listing "the degree of support plaintiff

was receiving from the shareholders he purported to represent" and " the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself " as factors).

Viewing the evidence in the light most favorable to Mattison, we find Mattison failed to put forth evidence that the other members of MPS opposed the lawsuit due to any improper motivation or self-interests. *See also Angel Invs. LLC*, 216 P.3d at 951 ("[W]e hold that shareholders' motivation for opposing the derivative action is relevant to determining the question of whether any shareholder is similarly situated to the derivative plaintiff."). The other members of MPS who refused to support Mattison did not personally benefit from the alleged self-dealing of Majority Members. In fact, if Mattison's derivative action succeeded and Majority Members were ordered to return money to MPS, the value of the other minority members units would likely increase. Despite this, the minority members stated in their depositions that they did not support the derivative action because they had no issue with the compensation of the Majority Members, who contributed a great deal to the success of the firm. Mattison argues that the other members opposed the derivative action because they are still employed by MPS, but Mattison provided no evidence other than the fact of their continued employment to suggest this was their reason for their opposition.

We find no other reasonable inference could be drawn from the evidence presented but that Mattison's interest in increasing the value of her membership interests was her sole motivation for bringing the derivative action. *See Davis*, 619 F.2d at 593-94 (listing the factors to consider when determining whether a plaintiff was a fair and adequate representative in a derivative action, including "the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself" and "the remedy sought by plaintiff in the derivative action"). Mattison's January 14, 2019 letter to the Majority Members demanded a higher price for her membership units than that offered by MPS and stated that if the parties did not resolve the matter she intended to "file not only an action for judicial valuation of her shares, but also a shareholder derivative action on behalf of MPS." Additionally, Mattison's counsel agreed with the circuit court's statement that her "ultimate goal is to increase what her buyout is," but responded there was "nothing improper" in using the derivative action as leverage in the action regarding the valuation of Mattison's units. Mattison's primary interest in bringing the derivative action was to raise the price of her membership units–also the focus of her direct action against MPS. This did not represent the interests of the other members and is not in the best interests of MPS. *See Smith*, 977 F.2d at 949 (stating a "plaintiff in a shareholder derivative action owes the corporation his

undivided loyalty" and "must not have ulterior motives and must not be pursuing an external personal agenda"); *Blum*, 539 F.2d at 1390 ("While a plaintiff is not necessarily disabled to bring suit simply because some of his interests extend beyond that of the class, the court may take into account outside entanglements that render it likely that the representative may disregard the interests of the other class members."); *Smith*, 977 F.2d at 949 ("[T]he trial court should beware allowing a derivative suit to proceed where the 'representative could conceivably use the derivative action as "leverage" in other litigation . . . .'" (second alteration in original) (quoting *Blum*, 539 F.2d at 1390)).

We also find Mattison could not fairly and adequately represent MPS in a "class of one" derivative action because her interest in increasing the values of her membership shares conflicted with the interests of the corporation. *See Davis*, 619 F.2d at 594 (listing "economic antagonisms between representative and class" as a factor); *ShoreGood Water Co.*, 2009 WL 2461689, at *6 ("In many cases that have permitted single shareholder derivative claims, courts have rested their holding, in part, upon the observation that there was no hint of any conflict between the individual's interests and the interests of the corporation."). If Mattison were to prevail on her derivative claims, money might be returned to MPS. However, it is unclear what effect a finding that all of the Majority Members overcompensated themselves at the firm's expense and requiring them to return funds to MPS would have on the firm's future. Additionally, Mattison sought to invalidate the 2015 operating agreement, which was signed by all other members of MPS, and a finding that amendments to the operation agreement without unanimous consent were null and void, which would result in the divestment of two members of their ownership interest. Therefore, we hold evidence supports the circuit court's finding that Mattison's interests were economically antagonistic to MPS, despite her contention that she could fairly and adequately represent the corporation.

Applying the other *Davis* factors, we find Mattison was a driving force in this litigation and was familiar with the proceedings. *See Davis*, 619 F.2d at 594 (listing "indications that the named plaintiff was not the driving force behind the litigation" and "plaintiff's unfamiliarity with the litigation" as factors). As to whether there is other litigation pending between the parties, Mattison did not initiate the declaratory judgment action MPS filed regarding the valuation of Mattison's membership units, and therefore we give it less weight when determining her ability to represent the other members. *See Vanderbilt v. Geo-Energy Ltd.*, 725 F.2d 204, 208 (3d Cir. 1983) ("[L]ess weight should be given to a corporate defendant's claim for the disqualification of the representatives of the shareholder class where the corporate defendant was the one who initiated the

litigation about which it now complains."). We also find the Majority Members have not provided evidence of any vindictiveness on Mattison's part toward MPS or the Majority Members. *See Davis*, 619 F.2d at 594 (listing "plaintiff's vindictiveness toward the defendants" as a factor).

After considering the *Davis* factors, we find the only reasonable inference to be drawn from the evidence was that Mattison could not represent MPS as a "class of one" because her sole motivation was to increase the valuation of her shares and her interests conflict with the interests of MPS. *See Davis*, 619 F.2d at 593 (stating "it is frequently a combination of factors which leads a court to conclude that the plaintiff does not fulfill the requirements of 23.1 (although often a strong showing of one way in which the plaintiff's interests are actually inimical to those he is supposed to represent fairly and adequately, will suffice in reaching such a conclusion)"). Therefore, we hold the circuit court did not err in granting summary judgment in favor of Majority Members because Mattison failed to put forth evidence of a genuine issue of material fact as to whether she could fairly and adequately represent MPS as a "class of one" in a derivative action. *See S. Glass & Plastics Co.*, 399 S.C. at 490, 732 S.E.2d at 208-09 ("When reviewing the grant of a summary judgment motion, [an appellate] court applies the same standard that governs the trial court under Rule 56(c), SCRCP; summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."). Accordingly, we affirm the circuit court on this issue.

## II.  Minority Members' Statements

Mattison argues the circuit court erred in relying on the unsworn, boilerplate statements of MPS's minority members in ruling on MPS's motion for summary judgment. We agree the circuit court erred in considering the signed members statements because the statements were not sworn or notarized. *See Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment."); Rule 56(c),SCRCP ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). However, we find other evidence presented by Majority Members proved

Mattison lacked the support of the other minority members of MPS.[5]  The six minority members Mattison deposed affirmed under oath that they did not support Mattison's derivative action, even after they were given information about Mattison's accusations against MPS.  Additionally, the fact that no other minority members have filed suits against MPS or participated in the derivative action indicates the derivative action is not in the interest of the other members.  *See Davis*, 619 F.2d at 596 ("[N]o members of the other proposed subclasses have indicated an interest in the suit by instituting independent suits of their own, which frequently happens where the claims are believed to be meritorious and in the interests of the class. Nor has there been any indication that members of these other proposed subclasses desire to be represented by plaintiff." (quoting *Guttmann v. Braemer*, 51 F.R.D. 537, 539 (SDNY 1970)).  Because the circuit court considered other evidence that was properly before it on this issue, any error in relying on the unsworn statements does not require reversal.

## III.  Confidential Settlement Communications

Mattison argues the circuit court erred in considering evidence that improperly revealed pre-litigation settlement discussions when granting MPS's motion for summary judgment.  She contends the evidence was inadmissible under Rule 408, SCRE, and it was improper for MPS to use that evidence to argue she threatened filing a derivative action solely to obtain a higher valuation of her shares.

"Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount."  Rule 408, SCRE. "This rule . . . does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, [negating] a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."  *Id.*

We hold the circuit court did not err in considering Mattison's January 14, 2019 letter regarding HDH's valuation of her shares.  Mattison referenced the letter in her pleadings, stating her "counsel sent a letter to [MPS's] counsel suggesting that the firm should take action against its managing Members for breach of fiduciary duty."  *See Frazier v. Badger*, 361 S.C. 94, 104, 603 S.E.2d 587, 592 (2004) ("A

---

[5] Although an exact number is not stated in the record, MPS appears to have eighteen minority members including Mattison based on the number of statements signed in opposition to the derivative action.

litigant cannot complain of prejudice by reason of an issue he has placed before the court."); Rule 56(c), SCRCP ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").  Further, she stated in her memorandum in opposition to the Majority Members' motion to dismiss, which was filed with the circuit court, that the January 14, 2019 letter "was not written in the context of settlement negotiations." Thus, by her own statements the letter did not constitute settlement negotiations and therefore did not violate Rule 408.  Therefore, we hold the circuit court did not err in considering Mattison's initial demand letter along with the other evidence in the record that supported its finding that Mattison brought the derivative action to increase the price of her units, such as the statements Mattison's counsel made during the proceedings when considering Majority Member's summary judgment motion.

As to the admission of the initial demand made by Mattison in the January 14, 2019 letter, even assuming it was an error to admit the demand pursuant to Rule 408, we find the error did not prejudice Mattison because the circuit court did not rely on the demand in granting summary judgment to Majority Members.  *See Johnson v. Sam Eng. Grading, Inc.*, 412 S.C. 433, 448, 772 S.E.2d 544, 552 (Ct. App. 2015) (stating prejudice is required to obtain reversal based on the erroneous admission of evidence).  At the hearing, after Mattison's counsel stated the admission of her initial demand was improper, the circuit court stated "aside from the numbers, the clear uncontested issue . . . in your correspondence to [Majority Members' counsel] is that 'We reject this offer that you have given us.  And if you don't settle with us, we're going to file this derivative action.'"  The circuit court did not reference Mattison's original demand in its order granting summary judgment, which it based in part on its finding that she brought the derivative action to gain leverage in the dispute concerning the valuation of her units.  Therefore, even if Mattison's initial demand should not have been admitted, this issue does not warrant reversal of the circuit court's grant of summary judgment.

## IV.  Verified Complaint and Supplemental Affidavit

Mattison argues the circuit court erred in disregarding her affidavit, amended answer, counterclaims, and third-party complaint when determining she had "presented no facts, by affidavit or otherwise, to support her allegations against the third-party defendants."  She contends the allegations of self-dealing transactions made by Majority Members contained in her verified pleading must be taken as true when considering her motion for summary judgment.  She further asserts her

affidavit "confirms she can fairly and adequately represent the interest of similarly situated minority members in enforcing the rights of MPS" against Majority Members. We disagree.

We hold Mattison has failed to identify any facts related to her derivative action that the circuit court overlooked in granting summary judgement. Her conclusory statement contained in her affidavit that she could fairly and adequately represent the other minority members in a derivative action did not create a genuine issue of material fact precluding summary judgment. *See Trotter v. First Fed. Sav. & Loan Ass'n*, 298 S.C. 85, 90 n.3, 378 S.E.2d 267, 270 n.3 (Ct. App. 1989) ("A conclusory statement on the issue in dispute does not create a question of fact precluding summary judgment."). We find the majority of the allegations contained in her verified pleadings regarding Majority Members' self-dealing transactions related to the merits of her derivative claim but not to whether she was a fair and adequate representative of other members of MPS, which was the issue before the circuit court on summary judgment. Mattison's derivative action complaint does state that she could "fairly and adequately represent the interests of the members of MPS who are similarly situation in enforcing the rights of MPS" and that she could represent the other minority members "without fear of retaliation by Managing Members in the form of adverse employment actions" because she was no longer an employee of MPS. We find these conclusory statements in the verified complaint cannot defeat a properly supported motion for summary judgment. *See Dawkins v. Fields*, 354 S.C. 58, 68, 580 S.E.2d 433, 438 (2003) (stating "[t]he abundance of conclusory allegations found in respondents' verified complaint" meant it "simply [was] not an appropriate substitute for an affidavit"); *see also* Charles Alan Wright, et al., *Federal Practice and Procedure* § 2738 (1998) ("ultimate or conclusory facts and conclusions of law, as well as statements made 'on information and belief,' cannot be utilized on a summary-judgment motion" (footnotes omitted)). Accordingly, we affirm on this issue.

## V. Limited Discovery

Mattison argues the circuit court erred in refusing to allow sufficient discovery regarding "the merits of the derivative claims" or the questioning of "minority members about crucial elements of the derivative claims." She maintains she needed to question minority members regarding the underlying facts of the derivative action to support her allegations that the Majority Members concealed evidence of their self-dealing from the minority members of MPS. Mattison contends Majority Members' counsel thwarted her attempts to conduct discovery by limiting the depositions she took, instructing those deposed not to answer valid

questions, refusing to provide financial information and supplemental discovery responses, blocking third-party subpoenas, and keeping her expert witness from inspecting the Spartanburg office. She asserts the circuit court erred in rejecting her request for additional time to conduct discovery on whether she was a fair and adequate representative of the other minority members. We disagree.

We hold the circuit court did not err in limiting discovery to information regarding Mattison's ability to fairly and adequately represent the other members of MPS because it was within the circuit court's discretion to limit discovery to that threshold issue. *See Dunn*, 298 S.C. at 502, 381 S.E.2d at 735 ("A trial court judge's rulings on discovery matters will not be disturbed on appeal absent a clear abuse of discretion."); *Oncology & Hematology Assocs. of S.C., LLC v. S.C. Dep't of Health & Env't Control*, 387 S.C. 380, 388, 692 S.E.2d 920, 924 (2010) ("Generally, the scope of discovery is within the trial court's discretion." (quoting *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003))); Rule 26(b), SCRCP ("Unless otherwise limited by order of the court . . . the scope of discovery is as follows . . ."). We note that other jurisdictions have stated that the issue of whether a plaintiff is an adequate representative of other shareholders in a derivative action is a threshold issue to determine before reaching the merits of the claim. *See e.g. Barrett v. S. Conn. Gas Co.*, 374 A.2d 1051, 1059 (Conn. 1977) ("We note further that the issue of whether [the plaintiff] could assure the court of adequate representation of [the corporation]and its shareholders must necessarily be resolved before proceeding to the merits of the corporate claim in a derivative suit brought by him."). Therefore, we hold it was within the circuit court's discretion to limit discovery to this issue.

Additionally, Mattison deposed six MPS members and received thousands of pages of documents from MPS in response to her discovery requests. The circuit court based its finding that Mattison did not have the support of other members in bringing the derivative action on the depositions of the six members, in which they affirmed under oath they did not support the derivative action and testified they had no concerns about Majority Members' compensation, and the fact that no other minority members joined Mattison's derivative action or brought their own. The circuit court based its finding that Mattison brought the derivative action to gain leverage in the dispute over the valuation of her units on Mattison's counsel's statements during the summary judgment hearing and Mattison's statement in her January 14, 2019 letter that she planned to file an action for judicial valuation of her shares and this derivative action if the matter of the valuation of her units was not resolved. Therefore, we find that Mattison has not shown that further discovery would create a genuine issue of material fact as required to deny

summary judgment.  *See Guinan v. Tenet Healthsystems of Hilton Head, Inc.*, 383 S.C. 48, 54-55, 677 S.E.2d 32, 36 (Ct. App. 2009) ("A party claiming summary judgment is premature because they have not been provided a full and fair opportunity to conduct discovery must advance a good reason why the time was insufficient under the facts of the case, and why further discovery would uncover additional relevant evidence and create a genuine issue of material fact.").  Accordingly, we affirm the circuit court's grant of summary judgment as to this issue.

## VI.   Conflict of Interest

Finally, as to Mattison's argument that the circuit court erred in failing to address an alleged conflict of interest created by allowing the same law firms to represent MPS, the Majority Members, and the minority members of MPS, we hold Mattison abandoned this argument on appeal.  *See* Rule 208(b)(1)(E), SCACR (requiring citation to authority in the argument section of an appellant's brief); *First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (noting when a party fails to supply authority supporting her assertion, the party is deemed to have abandoned the issue on appeal).

## CONCLUSION

Based on the foregoing, the circuit court's order granting summary judgment in favor of Majority Members is

**AFFIRMED.**

**MCDONALD, J., and BROMELL HOLMES, A.J., concur.**